IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC,

Plaintiffs,

v.

SYMANTEC CORP.,

Defendant.

C.A. No. 13-440 (LPS)

**JURY TRIAL DEMANDED**

**DEFENDANT SYMANTEC CORPORATION'S**
**ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendant Symantec Corporation ("Symantec"), by and through its undersigned counsel, hereby submits this Answer, these Affirmative Defenses and these Counterclaims in response to the First Amended Complaint for Patent Infringement (the "Complaint") filed by Plaintiff Intellectual Ventures I LLC ("IV I") and Intellectual Ventures II LLC ("IV II" and collectively with IV I, "IV"). To the extent not specifically admitted herein, the allegations of IV's Complaint are denied. Symantec denies any allegations that may be implied by or inferred from the headings of the Complaint.

**ANSWER TO FIRST AMENDED**
**COMPLAINT FOR PATENT INFRINGEMENT**

1. Answering Paragraph 1, Symantec admits that this is an action that purports to arise under the patent laws of the United States.

2. Answering Paragraph 2, Symantec is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein, and on that basis denies them.

3. Answering Paragraph 3, Symantec is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth therein, and on that basis denies them.

4. Answering Paragraph 4, Symantec admits that it is a corporation organized and existing under the laws of Delaware, with a principal place of business in Mountain View, California, and that it transacts business in the United States. Symantec denies the remaining allegations set forth in this paragraph.

5. Answering Paragraph 5, Symantec denies each and every allegation set forth therein, and specifically denies any wrongdoing or infringement.

**JURISDICTION AND VENUE**

6. Answering Paragraph 6, Symantec admits that if IV were to have standing to assert U.S. Patent Nos. 5,537,533, 6,598,131, and 6,732,359 (the "Patents-in-Suit") in its own name, this Court would have subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), inasmuch as the Complaint purports to state claims for patent infringement arising under the patent laws of the United States.

7. Answering Paragraph 7, Symantec admits that the Court has personal jurisdiction over Symantec.

8. Answering Paragraph 8, Symantec admits that IV purports to base venue on 28 U.S.C. §§ 1391 and 1400(b), but denies that this venue is convenient for the parties and witnesses or an appropriate venue for resolution of this dispute, including because of the location of witnesses and documents among other facts, and asserts that California would be a more convenient and more appropriate forum for this action. Symantec denies any remaining allegations of this paragraph.

**COUNT I – INFRINGEMENT OF U.S. PATENT NO. 5,537,533**

9. Answering Paragraph 9, Symantec admits that, on its face, U.S. Patent No. 5,537,533 ("the '533 patent") attached as "Exhibit A" states that its title is "System and

method for remote mirroring of digital data from a primary network server to a remote network server," and that, on its face, the '533 patent states that it was issued on July 16, 1996, but denies that it was duly and legally issued. Symantec is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and on that basis denies them.

10. Answering Paragraph 10, Symantec denies each and every allegation set forth therein, and specifically denies any wrongdoing or infringement.

11. Answering Paragraph 11, Symantec denies each and every allegation set forth therein, and specifically denies any wrongdoing or infringement.

12. Answering Paragraph 12, Symantec denies each and every allegation set forth therein, and specifically denies any wrongdoing or infringement.

13. Answering Paragraph 13, Symantec admits that it has received service of the Complaint and that the Complaint purports to state a claim for infringement of the '533 patent, but Symantec specifically denies any wrongdoing or infringement or that such service constitutes notice or knowledge of infringement of the '533 patent. Symantec further admits that the '533 patent was cited in an information disclosure statement dated December 3, 2009 during the prosecution of U.S. Patent No. 7,664,983. Symantec denies any remaining allegations of this paragraph.

14. Answering Paragraph 14, Symantec denies each and every allegation set forth therein, and specifically denies any wrongdoing or infringement, that IV would be irreparably harmed, and that IV is entitled to injunctive relief, damages or any other relief.

15. Answering Paragraph 15, Symantec denies each and every allegation set forth therein, and specifically denies any wrongdoing or infringement, any willful and deliberate

infringing conduct, that this is an exceptional case, and that IV is entitled to any increased damages, attorneys' fees or costs.

**COUNT II – INFRINGEMENT OF U.S. PATENT NO. 6,598,131**

16. Answering Paragraph 16, Symantec admits that, on its face, U.S. Patent No. 6,598,131 ("the '131 patent") attached as "Exhibit B" states that its title is "Data image management via emulation of non-volatile storage device," and that, on its face, the '131 patent states that it was issued on July 22, 2003, but denies that it was duly and legally issued. Symantec is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and on that basis denies them.

17. Answering Paragraph 17, Symantec denies each and every allegation set forth therein, and specifically denies any wrongdoing or infringement.

18. Answering Paragraph 18, Symantec denies each and every allegation set forth therein, and specifically denies any wrongdoing or infringement.

19. Answering Paragraph 19, Symantec denies each and every allegation set forth therein, and specifically denies any wrongdoing or infringement.

20. Answering Paragraph 20, Symantec admits that it has received service of the Complaint and that the Complaint purports to state a claim for infringement of the '131 patent, but Symantec specifically denies any wrongdoing or infringement or that such service constitutes notice or knowledge of infringement of the '131 patent. Symantec further admits that the '131 patent was cited in an information disclosure statement dated September 30, 2005 during the prosecution of U.S. Patent No. 7,673,130; an information disclosure statement dated May 15, 2007 during the prosecution of U.S. Patent No. 7,702,892; and an information disclosure

statement dated March 6, 2008 during the prosecution of U.S. Patent No. 7,496,920. Symantec denies any remaining allegations of this paragraph..

21. Answering Paragraph 21, Symantec denies each and every allegation set forth therein, and specifically denies any wrongdoing or infringement, that IV would be irreparably harmed, and that IV is entitled to injunctive relief, damages or any other relief.

22. Answering Paragraph 22, Symantec denies each and every allegation set forth therein, and specifically denies any wrongdoing or infringement, any willful and deliberate infringing conduct, that this is an exceptional case, and that IV is entitled to any increased damages, attorneys' fees or costs.

**COUNT III – INFRINGEMENT OF U.S. PATENT NO. 6,732,359**

23. Answering Paragraph 23, Symantec admits that, on its face, U.S. Patent No. 6,732,359 ("the '359 patent") attached as "Exhibit C" states that its title is "Application process monitor" and that, on its face, the '359 patent states that it was issued on May 4, 2004, but denies that it was duly and legally issued. Symantec is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph, and on that basis denies them.

24. Answering Paragraph 24, Symantec denies each and every allegation set forth therein, and specifically denies any wrongdoing or infringement.

25. Answering Paragraph 25 Symantec denies each and every allegation set forth therein, and specifically denies any wrongdoing or infringement.

26. Answering Paragraph 26, Symantec denies each and every allegation set forth therein, and specifically denies any wrongdoing or infringement.

27. Answering Paragraph 27, Symantec admits that it has received service of the Complaint and that the Complaint purports to state a claim for infringement of the ’359 patent, but Symantec specifically denies any wrongdoing or infringement or that such service constitutes notice or knowledge of infringement of the ’359 patent. Symantec denies any remaining allegations of this paragraph..

28. Answering Paragraph 28, Symantec denies each and every allegation set forth therein, and specifically denies any wrongdoing or infringement, that IV would be irreparably harmed, and that IV is entitled to injunctive relief, damages or any other relief.

**JURY DEMAND**

29. Answering Paragraph 29, Symantec acknowledges that IV demands a trial by jury on all issues.

**RESPONSE TO PRAYER FOR RELIEF**

Symantec denies that it infringes or has infringed any valid and enforceable claim of the Patents-in-Suit. Symantec also denies that IV is entitled to any relief requested against Symantec, including injunctive relief, damages, attorneys’ fees, costs, interest, or any other relief of any kind, including, without limitation, Paragraphs (a) through (e) of IV’s Prayer for Relief.

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**
**(Failure to State a Claim)**

IV has failed to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**
**(Non-Infringement)**

Symantec is not infringing and has not infringed, either literally or under the doctrine of equivalents, directly, by inducement, contributorily, willfully, or in any way, any valid, enforceable claim of the Patents-in-Suit.

**THIRD AFFIRMATIVE DEFENSE**
**(Invalidity)**

One or more claims of the Patents-in-Suit are invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including without limitation §§ 101, 102, 103 and/or 112.

**FOURTH AFFIRMATIVE DEFENSE**
**(Waiver, Laches, Estoppel)**

IV's claims for relief, in whole or in part, are barred by the doctrines of waiver, laches, and/or estoppel. At a minimum, IV is barred from recovering any pre-suit damages as a result of waiver, laches and/or estoppel. Further, by reason of the proceedings in the U.S. Patent and Trademark Office during prosecution of the applications for the Patents-in-Suit and related patents, IV is estopped from claiming infringement, either literally or under the doctrine of equivalents, by Symantec of one or more claims of the Patents-in-Suit.

**FIFTH AFFIRMATIVE DEFENSE**
**(Limitations on Damages)**

Any claim by IV for damages is limited under 35 U.S.C. §§ 286 and 287.

**SIXTH AFFIRMATIVE DEFENSE**
**(Unavailability of Injunctive Relief)**

IV cannot satisfy the requirements applicable to its request for injunctive relief and has an adequate remedy at law.

**SEVENTH AFFIRMATIVE DEFENSE**
**(Patent Misuse)**

Patent misuse renders the asserted claims of the Patents-in-Suit unenforceable. IV I and IV II, individually and in combination with affiliates and other entities (collectively, "Intellectual Ventures"), have engaged and are continuing to engage in a scheme to impermissibly broaden the scope of their patents, including the Patents-in-Suit, with anticompetitive effect.

**1. Impermissible Package Licensing**

Intellectual Ventures has compelled and sought to compel licensees and potential licensees including Symantec to take—and pay for—licenses to irrelevant and unwanted patents ("Tied Patents") as a condition for obtaining licenses to the Patents-in-Suit and related patents reading on Internet security, antivirus, storage, monitoring, and replication products ("Tying Patents").

To the extent that a license to the Tying Patents is "wanted" by Intellectual Ventures' victims, it is not because the Tying Patents are valid and infringed. They are not. Rather, a license to the Tying Patents is "wanted" because Intellectual Ventures bases its unlawful patent portfolio hold-up campaign—which is described in greater detail below—on the assertion that its victims, including Symantec, infringe the Tying Patents. According to Intellectual Ventures, a license to the Tying Patents would likely provide at least some measure of reprieve from Intellectual Ventures' unlawful hold-up campaign, while a license to the Tied Patents does not even afford that benefit.

Intellectual Ventures asserts that it has monopoly power in the relevant market for a portfolio consisting of the Tying Patents because no reasonable substitutes exist for a license to that portfolio. Thus, if Intellectual Ventures raises prices for the Tying Patent portfolio, putative Intellectual Ventures licensees cannot look to other patent holders for substitutes. A license to Intellectual Ventures' Tying Patent portfolio is therefore, if Intellectual Ventures' own assertions are true, indispensable. The fact that Intellectual Ventures has been able consistently and profitably to charge monopoly prices demonstrates that demand-side substitutability does not limit Intellectual Ventures' monopoly power.

Intellectual Ventures has conditioned and sought to condition a license to the Tying Patents on the putative licensee's agreement to also take and pay for a license to the entirely irrelevant and unwanted Tied Patents. Intellectual Ventures does not offer a license to the Tying Patent portfolio on a stand-alone basis. To the contrary, Intellectual Ventures deliberately obfuscates its patent holdings, making it impossible for Intellectual Ventures' victims, including Symantec, to determine which patents Intellectual Ventures may assert are relevant to its victims' products at any time. Because there is only one way to purchase—at extortionist hold-up prices—some measure of peace from Intellectual Ventures, namely a portfolio license comprised of both Tying and Tied patents, Intellectual Ventures has forced and is seeking to force its victims into a coerced conditioned agreement.

The Tied Patents are not simply added to the Tying Patents "for free." Rather, Intellectual Ventures attributes a significant percentage of the payments extracted from the licensee to those irrelevant and unwanted patents.

Intellectual Ventures is thus extending its unlawful hold-up power rooted in the Tying Patent portfolio to the Tied Patents, seeking to extract supra-competitive royalties for the package license. Intellectual Ventures' extraction of supra-competitive royalties affects a substantial amount of commerce and has raised prices to putative licensees and ultimately consumers. Moreover, by forcing its victims, including Symantec, to take a license to thousands of *invalid* Tied Patents, Intellectual Ventures reduces the economic incentives of its coerced licensees to challenge the validity of the Tied Patents. Such reduction in the incentives to challenge invalid patents has significant anticompetitive effects in the markets for the Tied Patents and the downstream products implementing those patents. The effect of Intellectual Ventures' conduct is directly contrary to the public policy that invalid or not-infringed patents

should not repress competition. Indeed, as demonstrated by Intellectual Ventures' existing portfolio licenses, its conduct of compelling licensees to take and pay for licenses to irrelevant and unwanted patents is not limited to companies in the Internet security, antivirus, storage, monitoring, and replication space.

**2. Impermissible Collection of Royalties from Invalid Patents**

Through threats and lawsuits, Intellectual Ventures is forcing and seeking to force its victims, including Symantec, to license vast patent portfolios that include thousands of invalid patents, including the Patents-in-Suit. Rampant invalidity of the patents in Intellectual Ventures' portfolio is not an impediment to Intellectual Ventures' business strategy because, unlike bona fide portfolio licensing, Intellectual Ventures' business model is not based on the licensing of valid and valuable patent rights, but on hold-up threats from asserting wave after wave of weak patents from a practically inexhaustible portfolio and thus pummeling its victims into submission.

Intellectual Ventures' conduct has severe anticompetitive effects in a relevant market for a patent portfolio that, according to Intellectual Ventures, covers antivirus, security, storage, monitoring, replication, and high-availability computing products and potential redesigned alternatives to those products, where Intellectual Ventures, as the sole licensor, has monopoly power. By forcing its victims to accept licenses to thousands of invalid patents, Intellectual Ventures eliminates the economic incentive of its coerced licensees to challenge the validity of those patents with anticompetitive effect and contrary to public policy. The foregoing constitutes patent misuse.

### 3. Unlawful Monopolization

Intellectual Ventures has illegally monopolized relevant markets for patent portfolios that it asserts are indispensable for making, selling, and using Internet security, antivirus, storage, monitoring, and replication products, as well as products in other fields. Intellectual Ventures has created monopolies in these markets by aggregating and bundling a collection of patents for which, according to Intellectual Ventures, no substitutes exist. By maintaining exclusive licensing authority over the portfolio and the patents comprising it, Intellectual Ventures creates, maintains, and exploits bottleneck access to the patents covering these essential technologies. Intellectual Ventures has thus impermissibly broadened the scope of the Patents-in-Suit by using them to obtain a market benefit beyond that which inheres in the statutory patent right in a manner that has anticompetitive effects.

Intellectual Ventures repeatedly has demonstrated its power to raise prices for its portfolio of patents by successfully charging supra-competitive royalties without suffering loss of demand or sales toward other licensors. The payments that Intellectual Ventures extracts from licensors do not reflect the inherent value of the patents in Intellectual Ventures' portfolio, which a licensee would pay in a competitive market. Rather, the payments reflect "hold up" value, resulting from Intellectual Ventures' deliberate strategy of mass patent aggregation followed by serial patent assertion.

By aggregating patents with the intent of subsequently asserting them in serial litigation—as it has done here to Symantec (*see Intellectual Ventures I LLC v. Check Point Software Techs Ltd. et al.*, C.A. No. 10-1067-LPS (D. Del.))—Intellectual Ventures makes it prohibitively costly for a target to invest in defending against alleged infringement of Intellectual Ventures' patent portfolio. For even if the target succeeds in defeating Intellectual Ventures'

first wave of asserted patents, Intellectual Ventures' strategy is to file another lawsuit, and then another. *See id.*, *see also Intellectual Ventures I LLC, et al. v. Canon Inc. et al.*, C.A. No. 11-792-SLR (D. Del.); *Intellectual Ventures I LLC et al. v. Canon, Inc. et al.*, C.A. No. 13-473-SLR (D. Del.).

Consequently, a rational target would pay for limited patent peace, even if Intellectual Ventures does not have a single valid and infringed patent in its portfolio. Such payments are therefore not compensation for the inventive value of the patents. Rather, they are hold-up payments, entirely attributable to Intellectual Ventures' willful patent aggregation and serial assertion strategy. Deliberately maximizing the cumulative cost of patent litigation in order to extract payments above and beyond the value of the patent in a competitive marketplace extends the patent monopoly to derive a benefit not attributable to the use of the patent's teaching and therefore constitutes misuse.

Intellectual Ventures has acted with specific intent to monopolize. It has carefully chosen, aggregated, and asserted patents specifically in order to maximize their cumulative hold-up value.

Intellectual Ventures' conduct has harmed the competitive process by, for example, forcing and seeking to force makers of Internet security, antivirus, storage, monitoring, and replication products to pay monopoly overcharges in the markets for Internet security, antivirus, storage, monitoring, and replication technologies and portfolios, thus raising costs and reducing the incentive to innovate, as operating companies such as Symantec foresee that if they achieve success by selling a product with enough revenue to attract Intellectual Ventures, Intellectual Ventures will seek to "tax" it. Moreover, Intellectual Ventures' campaigns of serially asserting waves of weak patents to intimidate its victims and coerce them into taking portfolio licenses at

exorbitant prices forces its victims, including Symantec, to expend significant resources in defending against Intellectual Ventures' monopolistic course of conduct. Such supra-competitive royalties also restrict output and raise prices in the downstream market for the technology-bearing products, therefore harming consumers. Moreover, by raising the costs of companies such as Symantec that compete with Intellectual Ventures' investors, Intellectual Ventures injures competition in the market for Internet security, antivirus, storage, monitoring, and replication products, as well as other products that it purports to cover with its patent portfolio.

Through the strategic abuse of its patent portfolio to extract hold-up value, Intellectual Ventures has committed patent misuse rendering the Patents-in-Suit unenforceable for so long as the misuse continues.

**EIGHTH AFFIRMATIVE DEFENSE**
**(Reservation of Affirmative Defenses)**

Symantec reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses at law or in equity that may exist now or that may be available in the future based on discovery and further factual investigation in this action.

**COUNTERCLAIMS**

Pursuant to Federal Rule of Civil Procedure 13, Defendant and Counterclaim-Plaintiff Symantec alleges the following against Plaintiff and Counterclaim-Defendant IV:

**PARTIES**

1. Symantec is a Delaware corporation with its corporate headquarters and principal place of business in Mountain View, California.

2. IV I alleges in its Complaint that it is a Delaware limited liability company with its principal place of business in Bellevue, Washington.

3. IV II alleges in its Complaint that it is a Delaware limited liability company with its principal place of business in Bellevue, Washington.

## JURISDICTION AND VENUE

4. Subject to the affirmative defenses and denials set forth above, this Court has jurisdiction over the subject matter of these Counterclaims under, without limitation, 28 U.S.C. §§ 1331, 1338, 1367, 2201 and 2202.

5. Symantec denies that this venue is convenient for the parties and witnesses or an appropriate venue for resolution of this dispute. However, if the present action remains in this district, venue is proper on these Counterclaims because IV has consented to venue by filing suit against Symantec in this district.

6. IV has submitted to the personal jurisdiction of this Court by bringing the present action alleging infringement of the Patents-in-Suit.

## COUNTERCLAIM AND COUNT ONE
**(Declaratory Judgment of Non-Infringement of the Patents-in-Suit)**

7. Symantec repeats and re-alleges the allegations of the preceding paragraphs 1-6 of these Counterclaims as if fully set forth herein.

8. IV has sued Symantec in the present action, alleging infringement of the Patents-in-Suit. Thus, an immediate, real and justiciable controversy exists between IV, on the one hand, and Symantec, on the other hand, with respect to the alleged infringement of the Patents-in-Suit.

9. Symantec is not infringing, and has not infringed, either literally or under the doctrine of equivalents, directly, by inducement, contributorily, or in any way, any valid, enforceable claim of the Patents-in-Suit.

10. Symantec is entitled to a declaratory judgment that it has not infringed and does not infringe, directly or indirectly, any valid, enforceable claim of the Patents-in-Suit.

11. IV has also filed this action without a good faith basis, making this an exceptional case. Consequently, IV is liable for any and all attorneys' fees, expenses and costs incurred by Symantec in connection with this action.

**COUNTERCLAIM AND COUNT TWO**
**(Declaratory Judgment of Invalidity of the Patents-in-Suit)**

12. Symantec repeats and re-alleges the allegations of the preceding paragraphs 1-11 of these Counterclaims as if fully set forth herein.

13. IV has sued Symantec in the present action, alleging infringement of the Patents-in-Suit. Thus, an immediate, real and justiciable controversy exists between IV, on the one hand, and Symantec, on the other hand, with respect to the alleged infringement of the Patents-in-Suit.

14. The claims of the Patents-in-Suit are invalid for failure to satisfy one or more of the requirements of Title 35 of the United States Code, including, without limitation, Sections 101, 102, 103 and/or 112.

15. Symantec is entitled to a declaratory judgment that the claims of the Patents-in-Suit are invalid.

16. IV has also filed this action without a good faith basis, making this an exceptional case. Consequently, IV is liable for any and all attorneys' fees, expenses and costs incurred by Symantec in connection with this action.

**DEMAND FOR JURY TRIAL**

17. Pursuant to Federal Rule of Civil Procedure 38(b), Symantec respectfully requests a trial by jury on all issues properly triable to a jury.

**PRAYER FOR RELIEF**

WHEREFORE, Symantec respectfully requests the following relief:

A. That IV take nothing on its Complaint;

B. That IV's Complaint be dismissed with prejudice and that all relief requested by IV be denied with prejudice;

C. That the Court find and declare that Symantec has not infringed and does not infringe in any manner any valid, enforceable claim of the Patents-in-Suit;

D. That the Court find and declare that each claim of the Patents-in-Suit is invalid, void, unenforceable, and without any force or effect against Symantec and its officers, employees, agents and attorneys, or any of them;

E. That the Court find and declare this to be an exceptional case under 35 U.S.C. § 285, entitling Symantec to an award of its reasonable attorneys' fees;

F. That the Court award to Symantec its costs associated with this case; and

G. That the Court award to Symantec such further relief, in law or in equity, as this Court deems just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Jack B. Blumenfeld

Jack B. Blumenfeld (#1014)
Thomas C. Grimm (#1098)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
tgrimm@mnat.com

*Attorneys for Defendant Symantec Corporation*

OF COUNSEL:

Mark A. Flagel
Kathy Yu
William W. Yu
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
(213) 485-1234

Dean G. Dunlavey
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
(714) 755-8260

Andrew J. Fossum
LATHAM & WATKINS LLP
717 Texas Avenue, 16th Floor
Houston, TX 77002
(713) 546-7449

Yury Kapgan
Suong Nguyen
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

May 9, 2013
7198653.1

**CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 9, 2013, upon the following in the manner indicated:

Joseph J. Farnan III, Esquire *VIA ELECTRONIC MAIL*
Brian E. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
*Attorneys for Plaintiffs*

Parker C. Folse III, Esquire *VIA ELECTRONIC MAIL*
Brooke A.M. Taylor, Esquire
Daniel J. Shih, Esquire
Jordan Talge, Esquire
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101
*Attorneys for Plaintiffs*

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)