IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | C.A. No. 13-440 (LPS) |
| SYMANTEC CORP., | ) ) ) | |
| Defendant. | ) | |

**SYMANTEC CORPORATION'S ANSWERING BRIEF IN OPPOSITION TO
PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS
ON DEFENDANT'S PATENT-MISUSE DEFENSE**

OF COUNSEL:

Mark A. Flagel
William W. Yu
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
(213) 485-1234

Dean G. Dunlavey
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
(714) 755-8260

Andrew J. Fossum
LATHAM & WATKINS LLP
717 Texas Avenue, 16th Floor
Houston, TX 77002
(713) 546-7449

Yury Kapgan
Suong Nguyen
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

January 13, 2014

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Thomas C. Grimm (#1098)
Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
tgrimm@mnat.com
kjacobs@mnat.com
mflynn@mnat.com

*Attorneys for Defendant Symantec Corporation*

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDINGS ..................................................1

SUMMARY OF ARGUMENT ................................................................................1

STATEMENT OF FACTS ......................................................................................2

ARGUMENT ..........................................................................................................2

I.     SYMANTEC HAS PROPERLY STATED A PATENT MISUSE DEFENSE .................2

     A.     Symantec Only Needs To "State" Its Patent-Misuse Affirmative Defense ............2

II.    FORCING LICENSEES TO PAY FOR IRRELEVANT PATENTS IS MISUSE ............4

     A.     Symantec Alleges Impermissible Patent Tying That Constitutes Misuse ..............4

     B.     Symantec Alleges Per Se Misuse ..........................................................................4

     C.     IV's Coercive Package License Is Also Misuse Under The Rule Of Reason ..........................................................................................................6

          1.     Symantec Was Not Required to Specifically Identify the Tied Patents to State a Claim of Patent Misuse ....................................7

          2.     IV Is Using The Patents-In-Suit As Leverage ............................8

          3.     There Is Nothing Procompetitive Or Efficient About IV's Licensing ..................................................................................9

          4.     IV's Practices Have Created Anticompetitive Effects In Relevant Markets ...................................................................10

III.   IV HAS MISUSED THE PATENTS-IN-SUIT BY USING THEM TO COLLECT ROYALTIES FROM INVALID PATENTS ..................................11

IV.   IV'S MONOPOLIZATION OF PATENT-LICENSING MARKETS IS MISUSE ..........12

     A.     The Federal Circuit Holds That An Antitrust Violation Can Be Misuse ...............13

     B.     Symantec Has Alleged A Relevant Market ..........................................................13

     C.     Symantec Has Alleged Monopoly Power .............................................................15

     D.     IV Has Willfully Acquired Monopoly Power ......................................................16

     E.     IV Has Impermissibly Broadened the Scope of the Patents-in-Suit ....................18

     F.     *Capital One* Does Not Help IV ........................................................................19

CONCLUSION ......................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Am. Sec. Co. v. Shatterproof Glass Corp.*,
154 F. Supp. 890 (D. Del. 1957) ........................................................................... 5

*Atari Games Corp. v. Nintendo of Am.*,
897 F.2d 1572 (Fed. Cir. 1990) ........................................................................... 16

*Auto. Radio Mfg. Co. v. Hazeltine Research, Inc.*,
339 U.S. 827 (1950) ........................................................................................... 13

*B. Braun Med., Inc. v. Abbott Labs.*,
124 F.3d 1419 (Fed. Cir. 1997) ............................................................................. 3

*Bayer Croposcience AG v. Dow Agrosciences LLC*,
Civ. No. 10-1045, 2011 WL 6934557 (D. Del. Dec. 30, 2011) ......................... 2, 3, 4

*C.R. Bard v. M3 Sys.*,
157 F.3d 1340 (Fed. Cir. 1998) ............................................................................. 5

*Cadence Pharm., Inc. v. Paddock Labs., Inc.*,
C.A. 11-733, 2012 WL 4565013 (D. Del. Oct. 1, 2012) ...................................... 2, 3

*Calif. Motor Transp. Co. v. Trucking Unltd.*,
404 U.S. 508 (1972) ........................................................................................... 17

*Cascades Computer Innovation LLC v. RPX Corp.*,
No. 12-CV-1143, 2013 U.S. Dist. LEXIS 170517 (N.D. Cal. Dec. 3, 2013) .......... 14

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*,
690 F.2d 1240 (9th Cir. 1982) ............................................................................. 17

*Commil USA, LLC v. Cisco Systems, Inc.*,
720 F.3d 1361 (Fed. Cir. 2013) ........................................................................... 11

*FTC v. Actavis, Inc.*,
133 S. Ct. 2223 (2013) .................................................................................. 11, 19

*Gemcor II, LLC v. Electroimpact Inc.*,
No. 11-CV-2520, 2012 WL 628199 (D. Kansas Feb. 27, 2012) ............................. 3

*Gordon v. Lewistown Hosp.*,
423 F.3d 184 (3d Cir. 2005) ............................................................................... 11

*Haley Paint Co. v. E.I. du Pont de Nemours & Co.*,
279 F.R.D. 331 (D. Md. 2012) ............................................................................ 20

*Ill. Tool Works Inc. v. Indep. Ink, Inc.*,
  547 U.S. 28 (2006) ..................................................................................... 5

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
  125 F.3d 1195 (9th Cir. 1997) ................................................................... 15

*IMX, Inc. v. E-Loan, Inc.*,
  784 F. Supp. 2d 1354 (S.D. Fla. 2010) ...................................................... 12

*In re Pabst Licensing GmbH Patent Litig.*,
  MDL No. 1298, 2000 U.S. Dist. LEXIS 12076 (E.D. La. 2000) ............... 14

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
  No. 1:13-cv-740 (E.D. Va. 2013) .......................................................... 19, 20

*Kelly v. United States*,
  809 F. Supp. 2d 429 (E.D.N.C. 2011) .......................................................... 3

*Kobe, Inc. v. Dempsey Pump Co.*,
  198 F.2d 416 (10th Cir. 1952) ................................................................... 16

*Lear, Inc. v. Adkins*,
  395 U.S. 653 (1969) ................................................................................... 13

*Linzer Prods. Corp. v. Sekar*,
  499 F. Supp. 2d 540 (S.D.N.Y. 2007) ....................................................... 13

*Mallinckrodt, Inc. v. Medipart, Inc.*,
  976 F.2d 700 (Fed. Cir. 1992) ..................................................................... 7

*Meredith Corp. v. SESAC, LLC*,
  09 Civ. 9177, 2011 U.S. Dist. LEXIS 24517 (S.D.N.Y. Mar. 8, 2011) ............ 14, 15

*Princo Corp. v. ITC*,
  616 F.3d 1318 (Fed. Cir. 2010) ........................................................... passim

*Rex Chainbelt, Inc. v. Harco Prods., Inc.*,
  512 F.2d 993 (9th Cir. 1975) ..................................................................... 17

*Saratoga Harness Racing v. Veneglia*,
  No. 94-CV-1400, 1997 U.S. Dist. LEXIS 3566 (N.D.N.Y. 1997) .................. 3

*SCM Corp. v. Xerox Corp.*,
  645 F.2d 1195 (2d Cir. 1981) ..................................................................... 16

*Sun Microsystems, Inc. v. Versata Enters., Inc.*,
  630 F. Supp. 2d 395 (D. Del. 2009) ............................................................. 3

*Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*,
   530 F.3d 204 (3d Cir. 2008) ................................................ 10

*Toll Bros., Inc. v. Twp. of Readington*,
   555 F.3d 131 (3d Cir. 2009) ................................................ 20

*Transparent-Wrap Mach. Corp. v. Stokes & Smith Co.*,
   329 U.S. 637 (1947) ....................................................... 11

*Tristrata Techs., Inc. v. Neoteric Cosmetics, Inc.*,
   Civ. No. 96-227, 1997 WL 34685963 (D. Del. Sept. 30, 1997)............... 12

*U.S. Philips Corporation v. International Trade Commission*,
   424 F.3d 1179 (Fed. Cir. 2005) ..................................... passim

*United States v. E.I. du Pont de Nemours & Co.*,
   351 U.S. 377 (1956) ................................................... 15, 19

*United States v. Grinnell Corp.*,
   384 U.S. 563 (1966) ......................................... 12, 13, 15, 16

*United States v. Loew's, Inc.*,
   371 U.S. 38 (1962) ..................................................... 4, 5, 6

*United States v. Phila. Nat'l Bank*,
   374 U.S. 321 (1963) ...................................................... 15

*United States v. Phillipsburg Nat'l Bank & Trust Co.*,
   399 U.S. 350 (1970) ...................................................... 15

*United States v. Singer Mfg. Co.*,
   374 U.S. 174 (1963) ...................................................... 17

*W. Penn Allegheny Health Sys. v. UPMC*,
   627 F.3d 85 (3d Cir. 2010) ........................................... 11, 19

*Waugh Chapel S., LLC v. United Food & Comm'l Workers Union Local 27*,
   728 F.3d 354 (4th Cir. 2013) ............................................ 17

*Whitserve v. GoDaddy.com, Inc.*,
   No. 11-cv-948, 2011 U.S. Dist. LEXIS 132636 (D. Conn. Nov. 17, 2011)...... 3

*Zenith Radio Corp. v. Hazeltine Research*,
   395 U.S. 100 (1969) ...................................................... 5

## STATUTES

35 U.S.C. § 271(d)(3) ....................................................... 12

# OTHER AUTHORITIES

HOVENKAMP *et al.*, IP AND ANTITRUST § 3.1 (2013) ...................................................................... 13

U.S. DEP'T OF JUSTICE & FED. TRADE COMM'N, ANTITRUST GUIDELINES FOR THE
    LICENSING OF IP §3.2.2 (1995) ............................................................................................... 14

WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1369 (2013) ..................................... 2, 4

# RULES

Fed. R. Civ. Proc. 8(a)(2) ............................................................................................................. 2

Fed. R. Civ. Proc. 8(b)(1) ............................................................................................................. 2

Fed. R. Civ. Proc. 8(d) ................................................................................................................ 16

Fed. R. Civ. Proc. 12(b)(6) ....................................................................................................... 1, 3

Fed. R. Civ. Proc. 12(c) ............................................................................................................ 1, 3

Fed. R. Civ. Proc. 12(f) ......................................................................................................... 1, 2, 3

## NATURE AND STAGE OF THE PROCEEDINGS

IV filed this second patent-infringement lawsuit against Symantec on March 18, 2013. (D.I. 1.) Symantec answered on May 9, 2013, stating defenses, including patent misuse. (D.I. 10 at 7-10.) IV filed a responsive pleading on June 3, 2013. (D.I. 13.) Discovery is underway. On December 11, 2013, seven months after Symantec asserted its misuse defense, IV filed the instant 12(c) motion for judgment on the pleadings on Symantec's misuse defense (the "Motion"). (D.I. 39.) This is Symantec's answering brief in opposition to the Motion.

## SUMMARY OF ARGUMENT

The Court should deny the Motion for two principal reasons.

First, the Motion relies on the wrong standard and fails under the right one. Because IV is challenging a defense, the Rule 12(f) standard applies. That standard requires only that Symantec state its defenses (which it did) and further requires IV to show that Symantec's misuse defense cannot succeed under any circumstances (which IV did not). IV's attempt to apply *Twombly*'s plausibility standard to Symantec's defense is simply wrong. IV's motion should be denied because Symantec has stated its defense.[1]

Second, the Motion fails because, among other things, (a) the *per se* misuse doctrine applies to "patent-to-patent" ties where, as here, the monopolist licensor does not simply throw in the tied patents "for free"; (b) Symantec has alleged everything required to show misuse under the rule of reason, including relevant markets and anticompetitive effects; and (c) IV's monopolization of relevant markets is a proper basis for a misuse *defense* and not, as IV suggests, an affirmative antitrust claim "in disguise."

---

[1] To be clear, Symantec's misuse defense meets both the Rule 12(f) standard and the Rule 12(b)(6) plausibility standard. The question is whether the Court should engage in a Rule 12(b)(6) plausibility analysis. It should not because the Rule 12(f) standard applies.

## STATEMENT OF FACTS

Symantec refers to the Statement of Facts outlined in IV's opening brief, and includes additional facts as necessary in the Argument section that follows.

## ARGUMENT

## I. SYMANTEC HAS PROPERLY STATED A PATENT MISUSE DEFENSE

### A. Symantec Only Needs To "State" Its Patent-Misuse Affirmative Defense

IV wrongly suggests that affirmative defenses are held to the same Rule 12(b)(6) plausibility standard as claims and counterclaims. (IV 12(c) Br., D.I. 40 at 5.) This Court consistently has held that a defendant need only "state" its affirmative defenses under Rule 8(b)(1) – in contrast to a claimant who must plead facts plausibly "showing" that the law entitles him to relief under Rule 8(a)(2). *See, e.g.*, *Cadence Pharm., Inc. v. Paddock Labs., Inc.*, C.A. 11-733, 2012 WL 4565013, at *1 (D. Del. Oct. 1, 2012) ("[A] majority of the District Courts within the Third Circuit that have addressed the issue have determined that the heightened pleading requirements of [*Twombly*/*Iqbal*] do not apply to the pleading of affirmative defenses."); *Bayer Cropscience AG v. Dow Agrosciences LLC*, Civ. No. 10-1045, 2011 WL 6934557, at *1 (D. Del. Dec. 30, 2011) ("[T]his Court agrees with those courts that have found *Twombly*/*Iqbal* inapplicable to affirmative defenses.").

In this case, the Rule 12(f) motion to strike standard applies because IV is challenging an affirmative defense – not a claim or counterclaim. *See, e.g.*, WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1369 (2013) ("Federal Rule 12(c) should be read in conjunction with . . . the Rule 12(f) motion to strike[.]"); *id.* at § 1367 (with respect to procedural defects "asserted upon a Rule 12(c) motion, presumably the district court will apply the same standards . . . as it would have employed had the motion been brought prior to the defendant's answer . . . under Rule 12(f)"); *see also Saratoga Harness Racing v. Veneglia*, No. 94-CV-1400, 1997 U.S. Dist.

LEXIS 3566, at *7-8 (N.D.N.Y. Mar. 18, 1997) ("[D]espite plaintiff's reliance on Rule 12(c), the Court will treat plaintiff's motion as one to strike defendants' affirmative defenses pursuant to Rule 12(f)."); *Kelly v. United States*, 809 F. Supp. 2d 429, 433 n.2 (E.D.N.C. 2011) (same).

IV understands that Rule 12(f) provides the standard by which to attack affirmative defenses at the pleading stage. Trying to avoid that standard, IV obscurely comments that, "[i]f a party misdesignates a counterclaim as an affirmative defense, a court must . . . treat the defense as if designated as a counterclaim." (IV 12(c) Br., D.I. 40 at 5.) But IV never says that Symantec's patent-misuse defense is, or should be, a counterclaim, which of course it is not. *See, e.g., B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1427 (Fed. Cir. 1997) (patent misuse is an affirmative defense). Thus, the Rule 12(b)(6) plausibility standard does not apply.

Courts routinely deny motions to strike patent misuse affirmative defenses. *See, e.g.*, *Cadence Pharm.*, 2012 WL 4565013, at *2; *Gemcor II, LLC v. Electroimpact Inc.*, No. 11-CV-2520, 2012 WL 628199, at *3 (D. Kansas Feb. 27, 2012) (denying motion to strike because "Electroimpact's patent misuse affirmative defense provides notice that Electroimpact intends to defend this lawsuit on grounds of patent misuse"); *Whitserve v. GoDaddy.com, Inc.*, No. 11-cv-948, 2011 U.S. Dist. LEXIS 132636, at *8-9 (D. Conn. Nov. 17, 2011) (denying motion to strike patent misuse defense as it "states a basis on which [defendant] plans to defend this lawsuit").

Indeed, "[m]otions to strike an affirmative defense are generally disfavored[.]" *Bayer*, 2011 WL 6934557, at *1. "When ruling on a motion to strike, 'the [c]ourt must construe all facts in favor of the nonmoving party and deny the motion if the defense is sufficient under law.'" *Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 402 (D. Del. 2009) (citation omitted). "Motions to strike are . . . ordinarily denied 'unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.'" *Id.* (citation

omitted). More generally, a "motion for judgment on the pleadings under Rule 12(c) may be granted only if all material issues can be resolved on the pleadings by the district court; otherwise, a summary judgment motion or a full trial is necessary." WRIGHT & MILLER, at § 1368.

Because Symantec has provided clear notice of its patent misuse affirmative defense, the Court should deny the Motion on that basis alone. *See, e.g.*, *Bayer*, 2011 WL 6934557, at *4 (denying motion to strike because "Defendant's affirmative defense provides fair notice under the liberal pleading standards of the Rule"). For the sake of completeness, though, Symantec now demonstrates that it has not merely stated, but has pleaded facts plausibly showing, that IV has misused the Patents-in-Suit.

## II.    FORCING LICENSEES TO PAY FOR IRRELEVANT PATENTS IS MISUSE
### A.    Symantec Alleges Impermissible Patent Tying That Constitutes Misuse

Symantec has alleged that IV uses its monopoly power over "the Patents-in-Suit and related patents . . . ('Tying Patents')" to force "licensees including Symantec to take – and pay for – licenses to irrelevant and unwanted patents ('Tied Patents')." (Symantec Aff'm Defenses, D.I. 10 at 8.) Through its anticompetitive tie-ins, IV has sought to extend monopoly power over the tying patents into otherwise-competitive technology markets covered by the tied patents. (*Id.*) The result has been higher prices for patent licensees and consumers. (*Id.*) That is misuse.

### B.    Symantec Alleges *Per Se* Misuse

IV argues that *U.S. Philips Corporation v. International Trade Commission*, 424 F.3d 1179 (Fed. Cir. 2005) made a sweeping declaration that "package licensing is not per se misuse." (IV 12(c) Br., D.I. 40 at 8.) Not so. The long-established rule is that a package license arrangement in which the licensee is forced to pay for unwanted items constitutes *per se* misuse. *United States v. Loew's, Inc.*, 371 U.S. 38 (1962) (block-booking arrangement in which licensee

television stations were forced to pay fees for films that they did not want is *per se* illegal), *overruled in part on other grounds by Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 42 (2006) (a patent does not in itself automatically prove market power); *C.R. Bard v. M3 Sys.*, 157 F.3d 1340, 1373 (Fed. Cir. 1998) ("[C]lassic grounds of patent misuse [include] . . . tying or enforced package licensing[.]"); *Am. Sec. Co. v. Shatterproof Glass Corp.*, 154 F. Supp. 890, 894 (D. Del. 1957) (when "the licensor refused to grant a license under one or more of its patents unless a license was taken under all," it committed misuse); *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 139 (1969) ("[P]atent misuse inheres in a patentee's insistence on a percentage-of-sales royalty, regardless of use, and his rejection of licensee proposals to pay only for actual use.").

Far from overruling this long line of precedent, *Philips* recognized and adhered to it. The Federal Circuit took care to distinguish *Loew's*, observing that a monopolist patentee commits misuse if it conditions the patents-in-suit on paying for a license to irrelevant patents. *Philips*, 424 F.3d at 1188-89. The package license in *Philips* was not misuse only because the tied patents were added to the bundle *for free*. *Philips*, 424 F.3d at 1188-89 ("In this case, unlike in *Loew's*, there is no evidence that a portion of the royalty was attributable to the patents that the Commission characterized as nonessential.") In the present case, Symantec has alleged that "[t]he Tied Patents are not simply added to the Tying Patents 'for free.' Rather, Intellectual Ventures attributes a significant percentage of the payments extracted from the licensee to those irrelevant and unwanted patents." (Symantec Aff'm Defenses, D.I. 10 at 9.) Symantec has therefore alleged *per se* misuse under the longstanding law that *Philips* recognized.

Nor can IV analogize its coercive patent tying to the portfolio licensing in *Philips*, which concerned a procompetitive blanket license by a bona fide patent pool. *Philips*, 424 F.3d at

1193. That pool engaged in efficient *ex ante* licensing, covering "all the patents needed to practice a particular technology" – there, the making and selling of recordable CDs. *Id.* The package included standard-essential and a small number of non-standard essential patents. Philips added the latter to the bundle for free (*id.* at 1191), which as noted above, was critical to the Federal Circuit's decision that there was no *per se* misuse under "the circumstances of [that] case." *Id.* at 1187.

The circumstances of the present case – as set forth in Symantec's misuse defense – are completely different. Symantec has alleged that "unlike bona fide portfolio licensing, Intellectual Ventures' business model is not based on the licensing of valid and valuable patent rights, but on hold-up threats." (Symantec Aff'm Defenses, D.I. 10 at 10.) The grounds on which *Philips* distinguished *Lowe's* – a procompetitive patent pool and tied patents provided for "free" – are absent here. As a result, the *per se* misuse rule applies.

Lastly, the Federal Circuit decided *Philips* based on a full evidentiary record. The court premised its finding that Philips had not misused its patents on the fact that, "unlike in Loew's, there is *no evidence* that a portion of the royalty was attributable to the patents that the Commission characterized as nonessential" and that "[t]he *evidence* in this case . . . does not indicate that there is a hidden charge for the so-called nonessential patents in the Philips patent packages." *Philips*, 424 F.3d at 1189, 1191 n.4 (emphasis added). If IV wishes to attempt to rely on *Philips*, it can only do so on summary judgment after discovery, not on the pleadings – especially since Symantec's defense alleges facts to the contrary of those in *Philips*.

## C. IV's Coercive Package License Is Also Misuse Under The Rule Of Reason

The Federal Circuit's precedent is clear: if a practice is not misuse *per se*, it will still constitute misuse under the rule of reason if it "tends to restrain competition unlawfully in an appropriately defined relevant market." *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 706

(Fed. Cir. 1992). In making licensees pay for irrelevant patents to obtain licenses to the Patents-in-Suit, IV has also engaged in misuse under the rule of reason. IV "has monopoly power in the relevant market for a portfolio consisting of the Tying Patents because no reasonable substitutes exist for a license to that portfolio." (Symantec Aff'm Defenses, D.I. 10 at 8.) Through its coercive package licensing, IV "extend[s] its unlawful hold-up power rooted in the Tying Patent portfolio to the Tied Patents, seeking to extract supra-competitive royalties for the package license." (*Id.* at 9.) This practice "reduces the economic incentives of its coerced licensee to challenge the validity of the Tied Patents," which "has significant anticompetitive effects in the markets for the Tied Patents and the downstream products implementing those patents." (*Id.*)

IV makes four arguments why, in its view, these allegations do not demonstrate misuse under the rule of reason: (1) "Symantec fails to allege which unwanted patents are 'tied' in Plaintiffs' purported package licenses"; (2) "Symantec has not adequately alleged that Plaintiffs improperly use . . . the specific patents-in-suit . . . as leverage"; (3) Symantec "ignor[es] the unique procompetitive benefits of package licensing"; and (4) "Symantec cannot . . . identify the 'market' in which Plaintiffs' alleged practices have injured competition." (IV 12(c) Br., D.I. 40 at 8.) None of these arguments holds water. Indeed, IV fails to cite any authority in support of any of these propositions, for the good reason that the law requires no such specificity for a defendant stating an affirmative defense. *See* section I.B., *supra*.

### 1. Symantec Was Not Required to Specifically Identify the Tied Patents to State a Claim of Patent Misuse

IV takes the remarkable position that, merely to *state* a misuse defense based on package licensing, a defendant must identify each irrelevant patent that the patentee is seeking to force it (and other actual and/or potential licensees) to license. (IV Br., D.I. 40 at 8.) IV cites no case law imposing such a duty at the pleading stage because none exists. Were it otherwise, no

company subject to coercive package licensing could state a misuse defense against a patent aggregator like IV that refuses to disclose the contents of its portfolio. IV has amassed and concealed tens of thousands of patents. IV has not presented Symantec with a list of all patents in its portfolio. As Symantec has alleged, the irrelevant patents in IV's portfolio number in the thousands. (Symantec Aff'm Defenses, D.I. 10 at 9.) Symantec needs discovery to learn further facts, which is why the law merely requires a defendant to state its affirmative defenses at the pleading stage. *See* section I.B., *supra*.

In any event, IV knows that there are patents within its portfolio that are clearly irrelevant to Symantec's business. Every issued patent bears a classification code, such that at a minimum the tied patents are those in IV's portfolio bearing classifications that do not relate to Symantec's operations. By contrast, Symantec has alleged which patents are relevant, and those are the ones purportedly "reading on Internet security, antivirus, storage, monitoring, and replication products ('Tying Patents')." (Aff'm Defenses, D.I. 10 at 8.)

### 2. IV Is Using The Patents-In-Suit As Leverage

IV argues that there is no misuse because its impugned behavior involves not just the Patents-in-Suit, but related patents, as well. (IV Br., D.I. 40 at 8-9.) This is wrong, as the case upon which IV relies, *Princo Corp. v. ITC*, 616 F.3d 1318 (Fed. Cir. 2010), makes clear.

In *Princo*, the anticompetitive behavior had nothing to do with the patents-in-suit. Here, the Patents-in-Suit underlie the misuse. In *Princo*, Philips sued Princo for infringing six of its patents. Princo argued that an agreement between Philips and its competitor, Sony, not to separately license Sony's patents constituted misuse of the Philips patents. The Federal Circuit rejected the argument, because the anticompetitive conduct – the agreement not to license the *Sony* patents – did not involve the *Philips* patents-in-suit. This case is different, because Symantec has alleged that "Intellectual Ventures has . . . impermissibly broadened the scope of

*the Patents-in-Suit by using them* to obtain a market benefit beyond that which inheres in the statutory patent right in a manner that has anticompetitive effects." (Aff'm Defenses, D.I. 10 at 11 (emphasis added).) As a result, in the present case there is a connection "between the patent right and the misconduct in question," such that the Patents-in-Suit "significantly contribute[] to the practice under attack," *because the practice under attack is asserting the Patents-in-Suit*, along with other IV patents. *See Princo*, 616 F.3d at 1331 (citation omitted).

### 3. There Is Nothing Procompetitive Or Efficient About IV's Licensing

IV argues that its package licensing has "unique procompetitive benefits," suggesting that forcing licensees to buy unwanted patent licenses is comparable to the blanket license present in *Philips*. (IV 12(c) Br., D.I. 40 at 7-8.) But Symantec expressly alleges that IV's practices do not achieve such efficiencies. In *Philips*, the pool license covered "all the patents needed to practice a particular technology and protect[ed] against the unpleasant surprise for a licensee who [would otherwise] learn[], after making a substantial investment, that he needed a license to more patents than he originally obtained." *Philips*, 424 F.3d at 1193. Here, in contrast, IV neither innovates nor contributes cutting-edge patented technologies to industry standards. Indeed, Symantec specifically avers that IV foists unwanted patents upon its licensees. IV aggregates weak patents to create an otherwise-absent threat with which to hold-up world-class innovators like Symantec. (Aff'm Defenses, D.I. 10 at 8-9.) Whereas certain of Philips's patents were essential – because they were necessary to implement recordable-CD technology – IV secures monopoly power over the Patents-in-Suit only through its "deliberate strategy of mass patent aggregation followed by serial patent assertion." (*Id.* at 8, 11.) IV makes Symantec and others "pay for . . . licenses to irrelevant and unwanted patents," whereas Philips offered nonessential patents for free. (*Id.* at 8.)

At this stage in the process, IV's views about the supposed merits of its business model are irrelevant. What matters are Symantec's allegations. And Symantec has alleged that IV's licensing practices lack procompetitive efficiencies. (*Id*. at 8-10.) IV's disagreement with those allegations is not a proper basis for entry of judgment at the pleading stage.

### 4. IV's Practices Have Created Anticompetitive Effects In Relevant Markets

Finally, IV argues that Symantec has failed to identify "the market in which [IV's] alleged practices have injured competition." (IV 12(c) Br., D.I. 40 at 8.) That, too, is incorrect. First, IV points to no law requiring a party to allege each relevant market in which the patent misuse causes anticompetitive effects. Regardless, Symantec *has* alleged a relevant market "for a portfolio consisting of the Tying Patents," namely the "Patents-in-Suit and related patents reading on Internet security, antivirus, storage, monitoring, and replication products." (Aff'm Defenses, D.I. 10 at 8.) Symantec has further alleged an anticompetitive effect on commerce in the market for the Tied Patents, namely that "Intellectual Ventures is . . . extending its unlawful hold-up power rooted in the Tying Patent portfolio to the Tied Patents . . . Intellectual Ventures' extraction of supra-competitive royalties affects a substantial amount of commerce and has raised prices to putative licensees and ultimately consumers." (*Id*. at 9.).

In addition, IV's practice of forcing victims to take a license to invalid patents reduces "the incentives to challenge invalid patents[, which] has significant anticompetitive effects in the markets for the Tied Patents and the downstream products implementing those patents." (*Id.*) Those allegations demonstrate anticompetitive effects in relevant markets. *See, e.g.*, *Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 226 (3d Cir. 2008) ("[P]roof of anti-competitive effects 'can be achieved by demonstrating that the restraint . . . raised prices or reduced quality. Alternatively, . . . proof of the defendant's market power will suffice.'")

(quoting *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 210 (3d Cir. 2005)); *W. Penn Allegheny Health Sys. v. UPMC*, 627 F.3d 85, 100 (3d Cir. 2010) ("Anticompetitive effects include increased prices, reduced output, and reduced quality."); *see also* section IV.B, *infra*.

## III.   IV HAS MISUSED THE PATENTS-IN-SUIT BY USING THEM TO COLLECT ROYALTIES FROM INVALID PATENTS

Symantec also has alleged that the Patents-in-Suit and thousands of patents in IV's portfolio are invalid.  (Aff'm Defenses, D.I. 10 at 10.)  IV is using the Patents-in-Suit to force Symantec and others to purchase licenses to these invalid patents, and in doing so IV "eliminates the economic incentive of its coerced licensees to challenge the validity of those patents with anticompetitive effect."  (*Id.*)  This constitutes misuse.  Indeed, although a "'valid patent excludes all except its owner[,]' . . . an invalidated patent carries with it no such right."  *FTC v. Actavis, Inc.*, 133 S. Ct. 2223, 2231 (2013) (emphasis and citation omitted).  By forcing licensees to pay for invalid patents, and in protecting those patents against invalidation, IV uses the Patents-in-Suit "'to acquire a monopoly not embraced in the patent.'"  *Princo*, 616 F.3d at 1327 (citation omitted).  In fact, using patent-based market power to extract payments for an unpatented article of commerce – such as an invalid patent – is a straightforward form of patent misuse.  *Transparent-Wrap Mach. Corp. v. Stokes & Smith Co*., 329 U.S. 637, 644 (1947).

IV's only response is that its threats and filing of lawsuits to force companies to license invalid patents cannot be misuse because, under the Patent Act, patentees can "enforce [their] patent rights against infringement or contributory infringement."  (IV 12(c) Br., D.I. 40 at 9-11 (citing 35 U.S.C. § 271(d)(3)).)  IV ignores, however, that "[i]t is axiomatic that one cannot infringe an invalid patent."  *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1368 (Fed. Cir. 2013); *see also Actavis*, 133 S. Ct. at 2231.  Moreover, IV premises its entire argument on its patents being valid, which contradicts Symantec's explicit allegations.  (Aff'm Defenses, D.I. 10

at 10 ("Intellectual Ventures is forcing and seeking to force its victims . . . to license vast patent portfolios that include thousands of invalid patents, including the Patents-in-Suit.").)

The case law upon which IV relies similarly assumes that the patentee was not asserting invalid patents. *See IMX, Inc. v. E-Loan, Inc.*, 748 F. Supp. 2d 1354 (S.D. Fla. 2010); *Tristrata Techs., Inc. v. Neoteric Cosmetics, Inc.*, Civ. No. 96-227, 1997 WL 34685963 (D. Del. Sept. 30, 1997). Those cases are further distinguishable. In *IMX,* the court adopted a legal standard to challenging affirmative defenses on the pleadings that the majority of courts in the Third Circuit has rejected. *IMX*, 748 F. Supp. 2d at 1356-57 ("The pleading requirements under Rule 8 for claims and defenses are essentially the same."). And *Tristrata* involved not an affirmative defense of patent misuse, but rather a counterclaim. 1997 WL 34685963. Furthermore, the asserted grounds of misuse there did not include forcing patentees to buy licenses to invalid patents. *Id.*

## IV.    IV'S MONOPOLIZATION OF PATENT-LICENSING MARKETS IS MISUSE

IV strategically aggregates patents to achieve otherwise-absent monopoly power and to hold-up Symantec and operating companies like it. (Symantec Aff'm Defenses, D.I. 10 at 11-13.) IV argues that the antitrust laws are indifferent to this. But the Supreme Court has long recognized that the willful acquisition of monopoly power other than through a "superior product, business acumen, or historic accident" is illegal monopolization. *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966). In handpicking patents that have no standalone value – but that it can use to level unfounded claims of infringement against existing products – and in accumulating thousands of such patents to create a systemic threat to its targets' businesses, IV monopolizes upstream technology markets to extract supra-competitive royalties from downstream licensees. This constitutes misuse. *See, e.g., Auto. Radio Mfg. Co. v. Hazeltine*

*Research, Inc.*, 339 U.S. 827, 834 (1950), *overruled on other grounds by Lear, Inc. v. Adkins*, 395 U.S. 653 (1969) (suggesting that the "accumulation of patents 'for the exaction of tribute'" and the "collect[ion] of royalties 'by means of the overpowering threat of disastrous litigation'" would be patent misuse).

### A.  The Federal Circuit Holds That An Antitrust Violation Can Be Misuse

IV's principal response is to argue that an antitrust violation "cannot be misuse."  (IV 12(c) Br., D.I. 40 at 12-13.)  Here again IV is wrong.  *See, e.g.*, *Linzer Prods. Corp. v. Sekar*, 499 F. Supp. 2d 540, 552 (S.D.N.Y. 2007) (Patent misuse "has largely merged with antitrust law."); HOVENKAMP *et al.*, IP AND ANTITRUST § 3.1 (2013) ("Misuse is closely intertwined with antitrust law, and most findings of misuse are conditioned on conduct that would also violate the antitrust laws.")  The very case on which IV relies shows as much.  *Princo* holds that "[a]n antitrust offense does not *necessarily* amount to misuse," which is a far cry from IV's claim that an antitrust offense "cannot be misuse."  *Id.* (emphasis added).  Indeed, "proof of an antitrust violation shows that the patentee has committed wrongful conduct having anticompetitive effects[.]"  *Princo*, 616 F.3d at 1329.

Even though Symantec need only state its misuse defense, it has alleged facts showing that (i) IV's patent portfolios constitute relevant markets, (ii) IV has monopoly power in those markets, and (iii) IV acquired that power through anticompetitive conduct.  Those facts also demonstrate actionable monopolization.  *Grinnell*, 384 U.S. at 570-71.  In using the Patents-in-Suit to effect its monopolization, IV is broadening their scope and thus misusing them.

### B.  Symantec Has Alleged A Relevant Market

Symantec alleges that the relevant market is IV's portfolio of patents that covers "antivirus, security, storage, monitoring, replication, and high-availability computing products and potential redesigned alternatives to those products."  (Symantec Aff'm Defenses, D.I. 10 at

10-11.)  IV argues that no technology market can exist for its patents "because such markets are limited to standard-essential patents not present in this case."  (IV 12(c) Br., D.I. 40 at 14.)  Again, IV fails to cite any support for this proposition, because it is wrong.

In antitrust law, the term "technology market" refers to trade in "intellectual property that is licensed."  U.S. DEP'T OF JUSTICE & FED. TRADE COMM'N, ANTITRUST GUIDELINES FOR THE LICENSING OF IP § 3.2.2 (1995).  A given technology market consists of a license and close substitutes for that license.  *Id.*  Here, Symantec alleges that IV has amassed a portfolio of intellectual property that it offers to license, and there are no substitutes to IV's patent portfolios.  (Symantec Aff'm Defenses, D.I. 10 at 11.)  No substitutes exist because no one else can grant Symantec (or anyone else) license rights to practice IV's claimed technologies. IV's portfolios are thus technology markets.  *See, e.g.*, *Meredith Corp. v. SESAC, LLC*, 09 Civ. 9177, 2011 U.S. Dist. LEXIS 24517, at *28 (S.D.N.Y. Mar. 8, 2011) (an alleged market limited to SESAC's portfolio of copyrighted works relevant to television programming was plausible because the TV-station plaintiffs had no choice).

Contrary to what IV asserts (IV 12(c) Br., D.I. 40 at 14-15,) courts recognize technology markets that do not involve standard-essential patents.  *See, e.g.*, *Cascades Computer Innovation LLC v. RPX Corp.*, No. 12-CV-1143, 2013 U.S. Dist. LEXIS 170517, at *50 (N.D. Cal. Dec. 3, 2013) (a relevant market for the "purchase, acquisition or licensing of technology covered by" the plaintiff's 37 patents was plausible, as was a relevant submarket "for licenses under the '750 Patent alone," all in the absence of any standard); *see also In re Pabst Licensing GmbH Patent Litig.*, MDL No. 1298, 2000 U.S. Dist. LEXIS 12076, at *17 (E.D. La. 2000) (rejecting defendants' "claims that there can be no such thing as a technology market").  The whole idea that a technology market must involve a standards-essential patent is illogical and contrived.

IV's argument that its portfolio cannot constitute a technology market because it contains some non-substitute technologies must also fail. The Supreme Court has long recognized that non-substitutes can be included in an antitrust market when they are sold together or commercial realities otherwise indicate that consumers consider those products as a package. *See United States v. Grinnell Corp.*, 384 U.S. 563, 572 (1966) ("We see no barrier to combining in a single market a number of different products or services where that combination reflects commercial realities."); *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 355-56 (1963) ("[T]he cluster of products[] and services[] denoted by the term 'commercial banking'[] . . . composes a distinct line of commerce."); *United States v. Phillipsburg Nat'l Bank & Trust Co.*, 399 U.S. 350, 355 (1970); *see also Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1205-06 (9th Cir. 1997). *Kodak* is analogous to the circumstances here. In that case, the court recognized a market consisting of a collection of complementary spare parts (none a substitute for another) that were collectively necessary to service Kodak photocopiers. *Id.*

### C. Symantec Has Alleged Monopoly Power

Symantec alleges that IV is a monopolist, as evidenced by IV's "power to raise price for its portfolio of patents by successfully charging supra-competitive royalties without suffering loss of demand or sales toward other licensors." (Symantec Aff'm Defenses, D.I. 10 at 11.) *See United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956) (monopoly power is "the power to control prices or exclude competition"). Furthermore, because "no substitutes exist" for its patent portfolios, IV has a 100% market share. (*Id.*) That also demonstrates monopoly power under Section 2 of the Sherman Act. *See, e.g.*, *SESAC*, 2011 U.S. Dist. LEXIS 24517, at *48 (as there was no substitute for the portfolio of SESAC, a copyright aggregator,

15

"SESAC holds nearly 100% of the relevant market, [such that] it is clear that [plaintiffs] have established monopoly power").[2]

### D.     IV Has Willfully Acquired Monopoly Power

Antitrust law condemns monopoly power when a firm acquires it "willfully," rather than through a superior product, business acumen, or historical accident. *Grinnell*, 384 U.S. at 570-71. In addition to tying (*see* section II, *supra*) – which also constitutes exclusionary conduct under Section 2 of the Sherman Act – Symantec alleges that IV's "willful patent aggregation and serial assertion strategy" constitutes exclusionary conduct. (Symantec Aff'm Defenses, D.I. 10 at 12.) That is anticompetitive behavior that violates the Sherman Act.

First, accumulating patents that purport to read on existing products and to hold-up the sellers of those goods is exclusionary conduct under Section 2. *See, e.g.*, *SCM Corp. v. Xerox Corp.*, 645 F.2d 1195, 1205 (2d Cir. 1981) (holding that "[p]atent acquisitions are not immune from the antitrust laws," and observing that acquisitions taking place after "the patented invention already has been commercialized successfully" violate the antitrust laws where they create monopoly power); *Atari Games Corp. v. Nintendo of Am.*, 897 F.2d 1572, 1576 (Fed. Cir. 1990) ("When a patent owner uses his patent rights not only as a shield to protect his invention, but as a sword to eviscerate competition unfairly, that owner may be found to have abused the grant and may become liable for antitrust violations when sufficient power in the relevant market is present."); *Kobe, Inc. v. Dempsey Pump Co.*, 198 F.2d 416, *passim* (10th Cir. 1952) (finding

---

[2] IV also makes the statement that "Symantec cannot have it both ways," suggesting that Symantec cannot label IV's patents as "essential" and invalid or not infringed at the same time. (IV 12(c) Br., D.I. 40 at 16.) That is wrong, because there is no contradiction. IV's ex post aggregation of thousands of related patents provides IV with significant hold-up power at the portfolio level, even though the constituent patents are individually invalid or not infringed. Moreover, even if IV were correct (which it is not), the Federal Rules expressly permit Symantec to plead in the alternative. Fed. R. Civ. P. 8(d).

anticompetitive a pool whose purpose "was to acquire patents relating to hydraulic pumps and to do everything reasonably within its power to 'build up and maintain its patent monopoly'").

Second, IV's serial assertion of patents to hold-up Symantec and other innovators is actionable exclusionary conduct. *See Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1263 (9th Cir. 1982) ("The Supreme Court [has] held that . . . aggregation of patents and prosecution of infringement suits constituted an actionable violation of the antitrust laws.") (citing *United States v. Singer Mfg. Co*., 374 U.S. 174 (1963)); *Rex Chainbelt, Inc. v. Harco Prods., Inc*., 512 F.2d 993, 1006 (9th Cir. 1975) (observing, in prior cases awarding antitrust treble damages based on patent-infringement suits, "the consistent thread of the patent infringement suit being used with ulterior motives as a predatory means – an aggressive weapon to attain some other anticompetitive end – , as opposed to its being used as a defensive shield with which to protect the patent interests.").

Because IV uses the judicial process as a weapon to coerce its victims to pay for thousands of patents not in litigation, filing multiple lawsuits against Symantec without regard to the merits, its serial assertion enjoys no protection. *Calif. Motor Transp. Co. v. Trucking Unltd.*, 404 U.S. 508, 513 (1972) ("[A] pattern of baseless, repetitive claims . . . cannot acquire immunity by seeking refuge under the umbrella of 'political expression.'"); *Waugh Chapel S., LLC v. United Food & Comm'l Workers Union Local 27*, 728 F.3d 354, 367 (4th Cir. 2013) (based on "a pattern of litigation . . . derived from 'a policy of starting legal proceedings without regard to the merits and for the purpose of waging a secondary boycott . . . a factfinder could reasonably conclude that the unions have abused their right to petition the courts and, as a result, have forfeited the protection of the First Amendment").

### E. IV Has Impermissibly Broadened the Scope of the Patents-in-Suit

IV has violated the antitrust laws, and in doing so it also has committed patent misuse. The Patents-in-Suit are integral to IV's monopolization. Contrary to its protestations, IV does indeed leverage the Patents-in-Suit to increase their scope. (IV 12(c) Br., D.I. 40 at 13.) Symantec alleges that IV has amassed thousands of variously invalid and noninfringed patents and is now using the Patents-in-Suit to give force to the monopoly power it already acquired through those acquisitions. The Patents-in-Suit are the conduit for IV's hold-up campaign; IV is using them to extract vastly greater sums than it could ever command from the Patents-in-Suit alone. On their own, the Patents-in-Suit would command (at most) minimal value – value much closer to their respective inventive contribution. But, asserted in serial fashion with the credible threat of endless more patents to follow, IV can extract hundreds of millions of dollars. That epitomizes increasing the scope of the Patents-in-Suit with anticompetitive effect.

IV argues that its licensing demands amount to nothing more than charging the monopoly price. (IV 12(c) Br., D.I. 40 at 18.) But that is not correct and Symantec has alleged otherwise. The monopoly price is the price that each of the Patents-in-Suit would fetch on its own, in (a) an *ex ante* licensing situation, without (b) the threat of serial assertion of thousands of patents. Such royalties would correspond to the inherent value of the Patents-in-Suit. Symantec has alleged that IV's demands go far beyond that. *Princo* observed that the misuse doctrine reflects the "desire to prevent a patentee from using the patent to obtain a market benefit beyond that which inheres in the statutory patent right." *Princo*, 616 F.3d at 1328 (citation omitted). The charging of supracompetitive royalties – royalties that exceed the market benefit inherent in the patent right – constitutes the use of a "monopoly not embraced in the patent," *id.* at 1327, and the anticompetitive harm brought about specifically as a result of the patent misuse.

### F. *Capital One* Does Not Help IV

Finally, IV urges the Court to adopt the reasoning of an unpublished opinion from the Eastern District of Virginia. (IV 12(c) Br., D.I. 40 at 12 (citing *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, No. 1:13-cv-740 (E.D. Va. 2013).)) The *Capital One* decision is incorrect and should not be followed.

In striking Capital One's patent misuse defense, the court committed numerous errors. In the first instance, it plainly erred in holding that a relevant market must "consist[] of an 'area of effective competition' between IV and … the alleged victims of IV's anticompetitive conduct." (D.I. 571, Ex. A at 8.) There is no requirement in antitrust law that the plaintiff and defendant must compete with each other in the relevant market. *See, e.g.*, *UPMC*, 627 F.3d at 102. In the great majority of antitrust cases that are "vertical," i.e., the plaintiff and defendant are related as buyer and seller rather than as competitors, this condition is not found. The market is defined by the interchangeable goods sold by IV's actual and potential competitors, whether or not Symantec is one of them, as the Supreme Court has long held. *See, e.g.*, *E.I. du Pont*, 351 U.S. at 395. An error of this magnitude impeaches the credibility of the *Capital One* decision.

The *Capital One* court also mistakenly assumed that IV's "requiring, by way of settlement, the licensing of its entire portfolio of patents . . . would not appear to constitute patent misuse." As explained above, in requiring a licensee *to pay for unwanted patents*, a monopolist licensor does indeed commit misuse. *See* section II, *supra*. Furthermore, the *Capital One* court erred in holding that the "concept of patent misuse is premised on the existence of an enforceable patent." As the Supreme Court explained last summer, protecting one's patent against invalidation "prevent[s] the risk of competition [and] . . . that consequence constitutes the relevant anticompetitive harm." *Actavis*, 133 S. Ct. at 2236. Because an invalid patent carries

no right to exclude, *id.* at 2231, the holder of such a patent necessarily goes beyond the scope of the patent when its conduct enables it to charge monopoly prices.

Symantec has alleged that IV "[d]eliberately maximiz[es] the cumulative cost of patent litigation in order to extract payments above and beyond the value of the patent in a competitive marketplace[, which] extends the patent monopoly to derive a benefit not attributable to the use of the patent's teaching and therefore constitutes misuse." (Symantec Aff'm Defenses, D.I. 10 at 12.) Symantec has therefore both stated and shown patent misuse. Nothing in *Capital One* changes that result.

## CONCLUSION

The Court should deny IV's motion for judgment on the pleadings, and permit the case to continue on its course through discovery.[3]

---

[3] Should the Court grant IV's motion, however, it should grant Symantec leave to amend. *See, e.g.*, *Haley Paint Co. v. E.I. du Pont de Nemours & Co.*, 279 F.R.D. 331, 336 (D. Md. 2012) ("[W]hen affirmative defenses are stricken, the defendant should normally be granted leave to amend."). *See also Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 144 n.10 (3d Cir. 2009) ("Under Federal Rule of Civil Procedure 15(a), leave to amend should be 'freely given when justice so requires,' and we have recognized that 'a district court must permit a curative amendment unless such an amendment would be inequitable or futile.'") (citation omitted).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Karen Jacobs
_____
Jack B. Blumenfeld (#1014)
Thomas C. Grimm (#1098)
Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
tgrimm@mnat.com
kjacobs@mnat.com
mflynn@mnat.com

*Attorneys for Defendant Symantec Corporation*

OF COUNSEL:

Mark A. Flagel
William W. Yu
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA 90071-1560
(213) 485-1234

Dean G. Dunlavey
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
(714) 755-8260

Andrew J. Fossum
LATHAM & WATKINS LLP
717 Texas Avenue, 16th Floor
Houston, TX 77002
(713) 546-7449

Yury Kapgan
Suong Nguyen
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

January 13, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 13, 2014, upon the following in the manner indicated:

Joseph J. Farnan III, Esquire                                   *VIA ELECTRONIC MAIL*
Brian E. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiffs*

Parker C. Folse III, Esquire                                    *VIA ELECTRONIC MAIL*
Brooke A.M. Taylor, Esquire
Daniel J. Shih, Esquire
Jordan Talge, Esquire
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101
*Attorneys for Plaintiffs*


*/s/ Karen Jacobs*

_____
Karen Jacobs (#2881)