IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC and<br>INTELLECTUAL VENTURES II LLC,<br><br>        Plaintiffs,<br><br>        v.<br><br>SYMANTEC CORP.,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 13-440 (LPS)<br>)<br>)<br>)<br>) |

**SYMANTEC CORPORATION'S ANSWERING BRIEF IN OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO FILE MOTION FOR SUMMARY
JUDGMENT ON SYMANTEC'S PATENT MISUSE DEFENSE**

OF COUNSEL:

Mark A. Flagel
William W. Yu
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, CA  90071-1560
(213) 485-1234

Dean G. Dunlavey
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
(714) 755-8260

Andrew J. Fossum
LATHAM & WATKINS LLP
717 Texas Avenue, 16th Floor
Houston, TX 77002
(713) 546-7449

Yury Kapgan
Suong Nguyen
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

January 13, 2014

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Thomas C. Grimm (#1098)
Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
tgrimm@mnat.com
kjacobs@mnat.com
mflynn@mnat.com

*Attorneys for Defendant Symantec Corporation*

## TABLE OF CONTENTS

                                                                      **Page**

NATURE AND STAGE OF THE PROCEEDINGS ...................................................................1

SUMMARY OF ARGUMENT .....................................................................................................1

STATEMENT OF FACTS ............................................................................................................3

ARGUMENT .................................................................................................................................4

I.      LEGAL STANDARD FOR SUMMARY JUDGMENT.......................................................4

II.     THE MOTION FOR LEAVE SHOULD BE DENIED BECAUSE IV SEEKS TO FILE ITS SUMMARY JUDGMENT MOTION TOO EARLY IN THE DISCOVERY PERIOD ..........................................................................................................5

III.    EVEN LIMITED DISCOVERY TO DATE REVEALS A GENUINE DISPUTE OF FACT AS TO IV'S TYING CONDUCT ....................................................................6

IV.    EVEN IF GRANTED, IV'S PROPOSED SUMMARY JUDGMENT MOTION WOULD NOT FULLY DISPOSE OF SYMANTEC'S PATENT MISUSE DEFENSE ...................................................................................................................9

CONCLUSION.............................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ............................................................................................................. 4

*Doe v. Abington Friends Sch.*,
  480 F.3d 252 (3d Cir. 2007) ............................................................................................ 4, 5

*Dowling v. City of Phila.*,
  855 F.2d 136 (3d Cir. 1988) ............................................................................................... 4

*Matsushita Elec. Indus. Co. v. Zenith Radio Cor*p.,
  475 U.S. 574 (1986) ............................................................................................................ 4

*Murphy v. Millennium Radio Grp. LLC*,
  650 F.3d 295 (3d Cir. 2011) ............................................................................................... 5

*Pa. Coal Ass'n v. Babbit*,
  63 F.3d 231 (3d Cir. 1995) ................................................................................................. 4

*Princo Corp. v. ITC*,
  616 F.3d 1318 (Fed. Cir. 2010) ........................................................................................ 10

### RULES

Fed. R. Civ. P. 56(a) ................................................................................................................. 4

Fed. R. Civ. P. 56(d) ................................................................................................................ 4

Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively, "IV") have moved for leave to file a motion for summary judgment on Defendant Symantec Corporation's ("Symantec's") patent misuse defense.  (D.I. 41.)  For the reasons stated herein, the Court should deny IV's motion.

## NATURE AND STAGE OF THE PROCEEDINGS

IV filed this second action against Symantec for alleged Patent Infringement on March 18, 2013.  (D.I. 1.)  IV filed a First Amended Complaint on March 26, 2013.  (D.I. 6.)  Symantec filed its Answer, Affirmative Defenses, and Counterclaims on May 9, 2013.  One of Symantec's affirmative defenses is the defense of patent misuse.  (D.I. 10 at 7-13.)

The Court issued its Scheduling Order on October 10, 2013.  (D.I. 21.)  That Order sets a November 21, 2014 fact discovery cutoff date and a March 26, 2015 deadline for filing dispositive motions.  (*Id*. at 2, 7.)

On December 11, 2013, IV filed a Motion for Judgment on the Pleadings on Defendant's Patent Misuse Defense ("12(c) motion") and a Motion for Leave to File Motion for Summary Judgment on Symantec's Patent Misuse Defense ("motion for leave").  (D.I. 39, 41.)  This is Symantec's opposition to the motion for leave.[1]  Symantec is filing a separate opposition to the 12(c) motion.

## SUMMARY OF ARGUMENT

IV brings this motion for leave to file an early summary judgment motion *over fifteen months* before the date this Court has scheduled for dispositive motions (D.I. 21 at 7) and well before Symantec has had an adequate opportunity to seek discovery on facts essential to its

---

[1] IV's motion for leave should also be denied for failure to satisfy the meet and confer requirement of D. Del. LR 7.1.1.  Not only did IV fail to confer with Symantec, but it provided Symantec no notice before filing its motion.  The motion for leave should be denied on that basis alone.

opposition. Allowing the motion now would only result in Symantec seeking further relief under Federal Rule of Civil Procedure 56(d), requesting the Court to delay or deny IV's proposed motion for summary judgment to allow Symantec to take discovery essential to its defense.

Even limited investigation to date reveals a genuine dispute of material fact as to IV's tying and monopolization conduct and confirms the futility of IV's proposed summary judgment motion. IV's claim that it "ha[s] been and [is] willing to offer a license to Symantec covering the patents-in-suit alone in this case" is both (a) unsubstantiated by the very declaration on which IV relies (D.I. 41 at 4, Ex. B), and (b) contradicted by publicly available evidence showing IV's portfolio licensing practices.

1.    Publicly available materials, including IV press releases, IV's statements on its website, IV's existing portfolio licenses that IV has described publicly, and statements by IV's founder Nathan Myhrvold, all substantiate that IV's business practice is to deliberately aggregate patents reading on existing products, create artificial patent thickets with an exclusionary power far exceeding that of the constituent patents and then demand that its victims take licenses to patent portfolios containing many unwanted patents. Symantec should be permitted to conduct discovery from IV to collect further evidence establishing IV's anticompetitive business practice constituting patent misuse.

2.    Moreover, even assuming IV could meet its burden in the summary judgment motion it seeks to file – though it could not – IV's motion would not dispose of Symantec's patent misuse defense or spare any judicial or party resources. IV ignores the other bases of Symantec's patent misuse defense, which state a defense based on IV's illegal monopolization of patent licensing markets *independent of* whether IV ties the patents-in-suit (and related patents) to "unwanted" patents.

**STATEMENT OF FACTS**

IV predicates its motion for leave to file a motion for summary judgment almost entirely on the claim that it "do[es] not condition licenses to the patents-in-suit on 'unwanted' or 'tied' patents." (D.I. 41 at 4 (emphasis original).)  In support of this assertion, IV relies on a purported single instance in which it licensed a third party in another litigation to just "the patents-in-suit *in that case*, along with any continuation, continuation-in-part, divisional, foreign counterpart, reexamination, or reissue of any application that led to the patents-in-suit."  *Id.* (emphasis added).  That lone transaction, according to IV, "conclusively demonstrates" that IV does not condition a license to *Symantec* to the patents-in-suit *in this case* – an entirely different set of patents – on other, unwanted patents.  *Id.*  Although IV claims that it "ha[s] been and [is] willing to offer a license to Symantec covering the patents-in-suit alone in this case," it cites no evidence of any such offer.  Indeed, the declaration of its employee, Roy Maharaj, on which it relies does not suggest that IV has offered such a license to Symantec, let alone on what terms and when.  *Id.*

Neither Symantec nor the Court is required to take at face value IV's assertion that it does not engage in impermissible package licensing.  Indeed, Mr. Maharaj's carefully worded assertion is directly contradicted by the publicly reported words of IV's founder and CEO, Nathan Myhrvold:  "we [] spend money buying existing patents from other people, including universities, corporations, garage investors – all ***with the intention of aggregating those patents and re-licensing them*** to different players in the market."[2]  Consistent with this, IV's website proclaims that it is "uniquely positioned to help our customers reduce their exposure and increase their IP potential ***through licensing our aggregated portfolio containing nearly 40,000 patent***

---

[2] Emphasis in the quoted material is added unless otherwise noted.

*assets*." Although it is clear that IV wishes to assert that its business practice is not to aggregate patents and force portfolio licenses on its victims – with the threat of endless litigation if its demands are not met – the publicly available facts demonstrate otherwise. There is no legal basis for precluding Symantec from taking discovery on this issue.

## ARGUMENT

### I. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is proper only if the court finds that "no reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby , Inc*., 477 U.S. 242, 255 (1986) (additional citations omitted). The moving party bears the burden of proving that no genuine dispute as to any material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Cor*p., 475 U.S. 574, 586 (1986). The nonmoving party must bring forth facts that demonstrate a genuine dispute and issue for trial. *Id*. at 587. The court views the facts and reasonable inferences in a light most favorable to the non-movant. *Pa. Coal Ass'n v. Babbit*, 63 F.3d 231, 236 (3d Cir. 1995).

"[I]t is well established that a court 'is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.'" *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) (quoting *Dowling v. City of Phila.*, 855 F.2d 136, 139 (3d Cir. 1988)). Under Federal Rule of Civil Procedure 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "District courts usually grant properly filed Rule 56(f) [now Rule 56(d)] motions as a matter of

4

course. This is particularly so when there are discovery requests outstanding or relevant facts are under the control of the moving party." *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 309-10 (3d Cir. 2011) (quoting *Abington Friends Sch.*, 480 F.3d at 257).

## II. THE MOTION FOR LEAVE SHOULD BE DENIED BECAUSE IV SEEKS TO FILE ITS SUMMARY JUDGMENT MOTION TOO EARLY IN THE DISCOVERY PERIOD

IV brings this motion for leave more than eleven months before the November 21, 2014 fact discovery cutoff (D.I. 21 at 2), more than fifteen months before the March 26, 2015 deadline for dispositive motions (*id.* at 7), and before Symantec has even had the opportunity to conduct discovery on the facts relevant to the early summary judgment motion IV seeks to file. As such, if the Court were to grant leave, Symantec would be forced to invoke Federal Rule of Civil Procedure 56(d) on the grounds that certain essential facts remain unavailable at so early a date.

As discussed below, the evidence IV cites in its motion for leave is not only deficient but also is contradicted by publicly available information about IV, principally information that comes from IV's own website or the statements of its founder and CEO, Mr. Myhrvold. There is a clear factual dispute. Even if Symantec were not able to produce evidence casting doubt on IV's claims at this early stage of the proceedings, however, Symantec is entitled to, and requires, a fair opportunity to take discovery from IV directly, from witnesses under oath, to respond to IV's contemplated summary judgment motion. IV contends it has "been and [is] willing to offer a license to Symantec covering the patents-in-suit alone in this case." (D.I. 41 at 3.) Symantec disputes that contention as a factual matter and should be allowed the benefit of the allotted discovery period to test the likelihood that IV's conditional promise to become "willing" to make an offer might produce an unbundled licensing offer to just the patents-in-suit in this case. As this is IV's first statement that it might be willing to offer Symantec a license to just the patents-in-suit, Symantec lacks the necessary discovery to confirm or refute this material fact.

5

As to the sole third party license to which IV repeatedly refers, which supposedly "conclusively demonstrates" that it does not condition a license to *Symantec* to the patents-in-suit *in this case*, that license did not even concern the patents-in-suit. Symantec has alleged that IV has committed misuse as to the specific patents-in-suit in the present case. And, by IV's own admission, IV has not offered such a license to Symantec. More importantly, Symantec is entitled to take discovery as to the circumstances leading to the settlement on which IV relies.

### III. EVEN LIMITED DISCOVERY TO DATE REVEALS A GENUINE DISPUTE OF FACT AS TO IV'S TYING CONDUCT

IV has not produced any significant discovery in this case concerning its business practices. Accordingly, IV's motion falls too early in the discovery period for Symantec to have acquired all of the facts that would be essential to an opposition. Yet even though Symantec's investigation to date has been restricted to searching publicly available materials, that limited investigation reveals a genuine dispute of fact as to IV's tying conduct. As public documents reveal, IV has historically and consistently demanded that licensees take a license to its entire portfolio, versus to just a limited segment, and licensees have complied.

IV's CEO has confirmed that IV's intention is to aggregate its patents and license the patent portfolio.[3] IV's anti-competitive practices have succeeded: IV's own press releases

---

[3] *See* Exh. 1 to Declaration of Andrew Fossum in Support of Symantec Corporation's Answering Brief in Opposition to Plaintiffs' Motion for Leave to File Motion for Summary Judgment on Symantec's Patent Misuse Defense ("Fossum Dec.") at 2 (printout of *Nathan Myhrvold's Intellectual Ventures on Patent Hoarding, Mosquito Lasers, and its $5 Billion Arsenal*, June 17, 2010, http://www.pehub.com/2010/06/qa-with-nathan-myhrvolds-intellectual-ventures/ ("[W]e [IV] also spend money buying existing patents from other people, including universities, corporations, garage investors – **all with the intention of aggregating those patents and re-licensing them to different players in the market**.")). *See also id.*, Exh. 2 (printout of Erick Schonfeld, *Is RPX's 'Defensive Patent Aggregation' Simply Patent Extortion By Another Name?,* Nov. 24, 2008 at 2 (noting that IV "buys up billions of dollars [sic] worth of patents and then gets companies to license the entire portfolio")); *id.*, Exh. 3 (printout of Melba Kurman, *University Patents and Intellectual Ventures Investment*, May 27, 2011,

establish that it has extracted licenses to its entire portfolio from numerous companies, even though the portfolio contains myriad patents covering fields unrelated to the licensees' businesses. As just one example, IV has described its portfolio as including agricultural patents.[4] Yet it appears to have successfully forced electronic equipment manufacturers such as HTC, LG, and Seiko Epson to license IV's entire portfolio, agricultural patents and all.[5]

In its motion for leave, IV seeks to rely upon the concurrently filed declaration of one of its employees, a person named Roy Maharaj. (D.I. 41, Ex. B.) First, if IV must rely on Mr. Maharaj's testimony to support its motion for summary judgment – indeed, as virtually the only support for its motion – Symantec should be permitted, at a minimum, to take Mr. Maharaj's deposition. It also should be afforded the benefit of discovery from IV of documents and other information that would impeach Mr. Maharaj's statements (like those materials cited above). That IV's contemplated motion would necessarily rely on the testimony of a witness who has not been subjected to cross-examination should be fatal to IV's motion for leave.

---

http://www.innovationexcellence.com/blog/2011/05/27/university-patents-and-intellectual-ventures-investment/ at 2 (noting that companies "***buy a license to get rights to Intellectual Venture's entire patent portfolio (sort of like a membership fee), instead of licensing rights to a selected few patents***")); *id*., Exh. 4 (printout of http://www.intellectualventures.com/license/why-license-from-iv (stating that IV is "uniquely positioned to help our customers reduce their exposure and increase their IP potential ***through licensing our aggregated portfolio containing nearly 40,000 patent assets***.")).

[4] *See, e.g.,* Fossum Dec., Exh. 5 (printout of http://www.intellectualventures.com/inventions-patents/patent-portfolio).

[5] *See, e.g.,* Fossum Dec., Exh. 6 (printout of *HTC and Intellectual Ventures Announce Licensing Agreement and Strategic Alliance,* Nov. 23, 2010, http://www.intellectualventures.com/news/press-releases/htc-and-intellectual-ventures-announce-licensing-agreement-and-strategic-al); *id*., Exh. 7 (printout of *LG Electronics Enters License Agreement with Intellectual Ventures*, Nov. 8, 1011, http://www.intellectualventures.com/news/press-releases/lg-electronics-enters-license-agreement-with-intellectual-ventures); *id*., Exh. 8 (printout of *Seiko Epson Corporation Enters into License Agreement with Intellectual Ventures*, Jan. 8, 2014, http://www.intellectualventures.com/news/press-releases/seiko-epson-corporation-enters-into-license-agreement-with-intellectual-ven).

Second, Mr. Maharaj's declaration does not even support IV's claims. Parsing through the carefully drafted wording in that declaration, IV does not try to assert that it has offered Symantec a license to just the patents at issue in this litigation. Instead, the declaration indicates that only when Symantec provides IV with some unspecified "information in Symantec's possession" will IV be "willing to offer" – though IV is not *promising to offer* – Symantec a license "covering only the patents-in-suit at issue in the present litigation." (*Id.*) The Maharaj Declaration fails to specify the duration, royalty amount, field of use, conditions, any associated peace from IV as to further litigation – in fact, it fails to specify *any* of the terms of a license to the patents-in-suit or any indication that Mr. Maharaj would have the authority to settle on IV's behalf or to override the stated intentions of IV's founder and CEO – namely, to license IV's patent portfolio as opposed to individual patents.

In addition, IV claims that its business model shares "unique procompetitive benefits of package licensing" (IV 12(c) Br., D.I. 40 at 8). Symantec has alleged otherwise. (Aff'm Defenses, D.I. 10 at 9.) Whether – and to what extent – IV ultimately will be able to show procompetitive benefits of its business model cannot be determined at this stage of the proceedings, before Symantec has had any meaningful discovery on IV's business practices. Clearly there is an unresolved question of material fact as to the economic benefits of IV's business model in this litigation, which has been widely drawn into question. For example, on September 26, 2013, the Federal Trade Commission, in response to widespread concerns over the anticompetitive effects of "firms with a business model based primarily on purchasing patents and then attempting to generate revenue by asserting the intellectual property against persons who are already practicing the patented technologies" invited public comments on a proposed study using its authority under Section 6(b) of the Federal Trade Commission Act, 15

8

U.S.C. § 46(b), to gather qualitative and quantitative information on patent acquisition, litigation, and licensing practices by patent assertion entities such as IV. *See* Fossum Dec., Exh. 9 (printout of Press Release, FTC Seeks to Examine Patent Assertion Entities and Their Impact on Innovation, Competition (Sept. 27, 2013), available at http://www.ftc.gov/news-events/press-releases/2013/09/ftc-seeks-examine-patent-assertion-entities-their-impact).)

Accordingly, both Symantec's limited investigation to date, and IV's own declaration, independently establish that there is a genuine dispute of fact as to IV's tying and monopolization conduct. IV's attempt to foreclose discovery through an early summary judgment motion is wholly inappropriate.

## IV. EVEN IF GRANTED, IV'S PROPOSED SUMMARY JUDGMENT MOTION WOULD NOT FULLY DISPOSE OF SYMANTEC'S PATENT MISUSE DEFENSE

IV argues that Symantec's patent misuse defense will "dramatically expand the scope – and cost of – discovery" and force the parties and the Court to "waste[]" resources "litigating Symantec's deficient defense." (D.I. 41 at 4–5.) IV exaggerates the discovery costs of Symantec's patent misuse defense and, as discussed above, declares the futility of Symantec's defense without basis.

Even assuming IV could meet its burden in the summary judgment motion it seeks to file – which it could not – such a motion would not dispose of Symantec's patent misuse defense or spare any judicial or party resources. IV reduces Symantec's patent misuse defense to one theory – package licensing – and calls package licensing "*[t]he* basis" of that defense. (D.I. 41 at 2 .) That is incorrect. Impermissible package licensing is not the only way that IV exploits its patents "to acquire a monopoly not embraced in the [patents-in-suit].'" *See Princo Corp. v. ITC*, 616 F.3d 1318, 1327 (Fed. Cir. 2010) (en banc) (citation omitted). As Symantec has alleged,

9

impermissible package licensing is just one of several means by which IV misuses the patents-in-suit.  (D.I. 10 at 7-13.)

In particular, IV's illegal monopolization of patent-licensing markets constitutes patent misuse *independent of* whether IV ties the patents-in-suit (and related patents) to "unwanted" patents.  As set forth in Symantec's affirmative defenses, IV creates monopolies in the markets for "making, selling, and using Internet security, antivirus, storage, monitoring, and replication products, as well as products in other fields" by "aggregating and bundling a collection of patents for which, according to Intellectual Ventures, no substitutes exist." (D.I. 10 at 11.)  IV "maintain[s] exclusive licensing authority over the portfolio and the patents comprising it" thereby "creat[ing], maintain[ing], and exploit[ing] bottleneck access to the patents covering these essential technologies." (*Id.*)  This conduct has anticompetitive effects and impermissibly broadens the scope of the patents-in-suit.  It thus constitutes misuse *even if* this Court were to grant summary judgment for IV as to Symantec's tying theory of misuse.  Far from "spar[ing] the parties and the Court" additional burden and expense (D.I. 41 at 5), IV's proposed summary judgment motion would waste additional resources with no meaningful narrowing of the issues left for trial.

## CONCLUSION

For the foregoing reasons, Symantec requests that this Court deny IV's motion for leave to file a motion for summary judgment on Symantec's patent misuse defense at this early stage in the proceedings.

|  |  |
|---|---|
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | */s/ Karen Jacobs* |
| OF COUNSEL: | Jack B. Blumenfeld (#1014) |
| | Thomas C. Grimm (#1098) |
| Mark A. Flagel | Karen Jacobs (#2881) |
| William W. Yu | Michael J. Flynn (#5333) |
| LATHAM & WATKINS LLP | 1201 North Market Street |
| 355 South Grand Avenue | P.O. Box 1347 |
| Los Angeles, CA 90071-1560 | Wilmington, DE 19899 |
| (213) 485-1234 | (302) 658-9200 |
| | jblumenfeld@mnat.com |
| Dean G. Dunlavey | tgrimm@mnat.com |
| LATHAM & WATKINS LLP | kjacobs@mnat.com |
| 650 Town Center Drive, 20th Floor | mflynn@mnat.com |
| Costa Mesa, CA 92626-1925 | |
| (714) 755-8260 | *Attorneys for Defendant Symantec Corporation* |

Andrew J. Fossum
LATHAM & WATKINS LLP
717 Texas Avenue, 16th Floor
Houston, TX 77002
(713) 546-7449

Yury Kapgan
Suong Nguyen
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

January 13, 2014

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2014, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 13, 2014, upon the following in the manner indicated:

| | |
|---|---|
| Joseph J. Farnan III, Esquire<br>Brian E. Farnan, Esquire<br>FARNAN LLP<br>919 North Market Street, 12th Floor<br>Wilmington, DE  19801<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |
| Parker C. Folse III, Esquire<br>Brooke A.M. Taylor, Esquire<br>Daniel J. Shih, Esquire<br>Jordan Talge, Esquire<br>SUSMAN GODFREY L.L.P.<br>1201 Third Avenue, Suite 3800<br>Seattle, WA 98101<br>*Attorneys for Plaintiffs* | *VIA ELECTRONIC MAIL* |

*/s/ Karen Jacobs*

Karen Jacobs (#2881)