# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and<br>INTELLECTUAL VENTURES II LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>SYMANTEC CORP.,<br><br>    Defendant. | : <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: | C.A. No. 13-440-LPS |

## **MEMORANDUM ORDER**

At Wilmington this **24th** day of **September 2014**:

Pending before the Court are Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC's (collectively "Plaintiffs" or "IV") Motion for Judgment on the Pleadings on Defendant's Patent-Misuse Defense (D.I. 39) and Plaintiffs' Motion for Leave to File Motion for Summary Judgment on Defendant's Patent-Misuse Defense (D.I. 41). For the reasons that follow, Plaintiffs' motions (D.I. 39, 41) are denied.

In its Answer, Defendant Symantec Corporation ("Defendant" or "Symantec") raised the affirmative defense of patent misuse by alleging that IV engages in (i) tying the patents-in-suit with other irrelevant and unwanted patents in package licenses, (ii) collecting royalties from invalid patents, and (iii) creating and maintaining an unlawful monopoly. (D.I. 10) Plaintiffs argue that these are legally-unsound grounds for an affirmative defense of patent misuse and, further, that the evidence of record cannot support this defense. (D.I. 40)

1

I.      **Plaintiffs' Motion for Judgment on the Pleadings**

As a threshold matter, Defendant contends that Plaintiffs' motion for judgment on the pleadings, which Plaintiffs contend they bring pursuant to Federal Rule of Civil Procedure 12(c), should properly be viewed instead as a motion to strike governed by the standards of Rule 12(f). Defendant takes this position because it raised patent misuse as an affirmative defense rather than as a claim or counterclaim. The Court agrees with Defendant.

Under Rule 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

"When deciding a motion for judgment on the pleadings pursuant to [Federal Rule of Civil Procedure] 12(c), the Court applies the same standard as that on a motion to dismiss pursuant to Rule 12(b)(6)." *Chirik v. TD BankNorth, N.A.*, 2008 WL 186213, at *5 (E.D. Pa. Jan. 15, 2008) (citing *Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir.1991)). A majority of the District Courts within the Third Circuit that have addressed the issue have determined that the pleading requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), do not apply to the pleading of affirmative defenses. *See Bayer CropScience AG v. Dow AgroSciences LLC*, 2011 WL 6934557, at *1 (D. Del. Dec. 30, 2011) ("While the Third Circuit has not yet opined as to whether *Twombly/Iqbal* is applicable to affirmative defenses, this Court agrees with those courts that have found *Twombly/Iqbal* inapplicable to affirmative defenses."); *see also Internet Media Corp. v. Hearst Newspapers, LLC*, 2012 WL 3867165, at *3 (D. Del. Sept. 6, 2012) (agreeing with

2

"well-articulated rationale" that "[i]n light of the differences between Rules 8(a) and 8(c) in text and purpose, . . . *Twombly* and *Iqbal* do not apply to affirmative defenses, which need not be plausible to survive. [An affirmative defense] must merely provide fair notice of the issue involved.") (internal quotation marks omitted); *XpertUniverse, Inc. v. Cisco Sys., Inc.*, 868 F. Supp. 2d 376, 386 n.3 (D. Del. June 19, 2012) (joining "the majority of the District Courts in the Third Circuit [that] have rejected the application of *Twombly* and *Iqbal*" to affirmative defenses). The Court agrees with these authorities. *Cadence Pharm., Inc. v. Paddock Labs., Inc.*, 2012 WL 4565013, at *1 (D. Del. Oct. 1, 2012). Therefore, despite IV's characterization of this motion as a Rule 12(c) motion, the Court will treat IV's motion as one to strike Defendant's affirmative defenses pursuant to Rule 12(f).

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Motions to strike are generally disfavored and ordinarily are denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties," *Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 400 (D. Del. July 1, 2009) (internal quotation marks omitted), "or if the allegations confuse the issues. . . . A motion to strike will not be granted where the sufficiency of the defense depends on disputed issues of facts or where it is used to determine disputed and substantial questions of law." *Cadence*, 2012 WL 4565013, at *1 (quoting *Weed v. Ally Fin., Inc.*, 2012 WL 2469544 at *2 (E.D. Pa. June 28, 2012)). "Such a motion should be denied if disputed issues of fact or law are implicated or if the alleged insufficiency is not clearly apparent from the pleadings." *Cadence*, 2012 WL 4565013, at *1 (quoting *Floyd v. Black Swan Shipping Co., Ltd.*, 2001 WL 799848 at *1 (E.D. Pa. July 13,

3

2001)). When assessing a motion to strike, the Court may only rely on the pleadings. *See Cadence*, 2012 WL 4565013, at *1.

"Patent misuse is an affirmative defense to an accusation of patent infringement, the successful assertion of which requires that the alleged infringer show that the patentee has impermissibly broadened the physical or temporal scope of the patent grant with anticompetitive effect." *Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 868 (Fed. Cir. 1997) (internal quotation marks omitted). "The key inquiry is whether, by imposing conditions that derive their force from the patent, the patentee has impermissibly broadened the scope of the patent grant with anticompetitive effect." *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998). "The courts have identified certain specific practices as constituting per se patent misuse, including so-called 'tying' arrangements in which a patentee conditions a license under the patent on the purchase of a separable, staple good and arrangements in which a patentee effectively extends the term of its patent by requiring post-expiration royalties." *Va. Panel*, 133 F.3d at 869 (internal citation omitted).

When a practice is not per se patent misuse, the practice may still constitute patent misuse if it "has the effect of extending the patentee's statutory rights and does so with an anti-competitive effect." *Id.* In those circumstances, the practice must be analyzed in accordance with the "rule of reason." *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 706 (Fed. Cir. 1992). "Under the rule of reason, the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect." *Va. Panel*, 133 F.3d at 869

4

(internal quotation marks omitted).

Pursuant to 35 U.S.C. § 271(d), certain practices are exempt from the affirmative defense of patent misuse. These practices include, in relevant part, "condition[ing] the license of any rights to the patent or the sale of the patented product on the acquisition of a license to rights in another patent or purchase of a separate product, unless, in view of the circumstances, the patent owner has market power in the relevant market for the patent or patented product on which the license or sale is conditioned." 35 U.S.C. § 271(d)(5). Thus, under § 271(d), "in the absence of market power, even a tying arrangement does not constitute patent misuse." *Va. Panel*, 133 F.3d at 869.

In *U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179, 1190 (Fed. Cir. 2005), the Federal Circuit held that package licenses are not per se patent misuse, because a "package license is thus not anticompetitive in the way that a compelled purchase of a tied product would be." In *Philips*, the patent owner licensed essential or "wanted" patents as part of a patent package that also included non-essential or "unwanted" patents. *Id.* at 1183-84. The Court found there was "no evidence that a portion of the royalty was attributable to the" nonessential patents and, thus, no basis to support the conclusion that "a hypothetical licensing fee would have been lower if Philips had offered to license the patents on an individual basis or in smaller packages." *Id.* at 1189. The Court went on to evaluate Philips's package license under the rule of reason and found that the evidence did not support a finding of "anticompetitive effect on competitors offering alternatives to the . . . nonessential patents" because (i) "the evidence did not show that including those patents in the patent packages had a negative effect on commercially available technology," (ii) there are "problems with licensing patents individually,"

5

including transaction and monitoring costs, (iii) changes in technology might render certain essential patents non-essential and vice-versa, and (iv) package licensing with royalties based on production output rather than patent input may be more efficient and avoid unnecessary litigation. *Id* at 1198.

Here, Defendant alleges that Plaintiffs engage in patent misuse by tying the "wanted" patents-in-suit with a large and undisclosed number of "unwanted" patents. (D.I. 10 at 8) The relevant market, according to Defendant, is the "portfolio consisting of the [t]ying [p]atents because no reasonable substitutes exist for a license to that portfolio." (*Id.*) Furthermore, Defendant has alleged that IV "has conditioned and sought to condition a license to the [t]ying [p]atents on the putative licensee's agreement to also take and pay for a license to the entirely irrelevant and unwanted [t]ied [p]atents." (*Id.* at 9) Thus, according to Defendant, unlike in *Philips*, at least some portion of the licensing cost is allegedly attributable to the unwanted patents. (*Id.* at 9) It follows, in Defendant's view, that a rule of reason analysis could result in a finding of patent misuse in this case.

The parties also dispute whether the alleged relevant market is correctly defined and whether Plaintiffs have market power within the correctly defined relevant market. Conducting a rule of reason analysis in light of these disputes will require additional factual information not in the record. Because the Court may only rely on the pleadings at this stage, the Court denies Plaintiffs' motion to strike Defendant's affirmative defense of patent misuse by package licensing.

Plaintiffs next assert that Defendant's second grounds for the patent misuse defense, i.e. the alleged collecting of royalties from invalid patents, is explicitly allowed by 35 U.S.C.

§ 271(d). Defendant alleges that Plaintiffs misuse their patents "[b]y forcing [their] victims to accept licenses to thousands of invalid patents," thereby eliminating "the economic incentive of its coerced licensees to challenge the validity of those patents." (D.I. 10 at 10) Section 271(d) exempts patent owners from being found to misuse a patent based on "enforc[ing] . . . patent rights against infringement or contributory infringement." Because issued patents carry a presumption of validity, Plaintiffs contend that by licensing their patent portfolio, they are merely enforcing their patent rights against infringement.

Defendant's affirmative defense alleges more than mere enforcement of patent rights by Plaintiffs. The allegation is that victims are forced to license thousands of invalid patents, resulting in an economic disincentive to challenge the validity of those patents. Whether this practice "impermissibly broaden[s] the physical or temporal scope of the patent grant with anticompetitive effect[s]," *Va. Panel*, 133 F.3d at 868, is a legal and factual question that the Court cannot resolve at this stage of the lawsuit, *see Cadence*, 2012 WL 4565013, at *1 (quoting *Weed*, 2012 WL 2469544, at *2) ("A motion to strike will not be granted where the sufficiency of the defense depends on disputed issues of fact or where it is used to determine disputed and substantial questions of law."). Accordingly, the Court denies Plaintiffs' motion to strike Defendant's affirmative defense of patent misuse by licensing invalid patents.

Defendant further alleges that Plaintiffs engage in patent misuse by creating and maintaining an unlawful monopoly. Specifically, Defendant contends that IV has "illegally monopolized relevant markets for patent portfolios that it asserts are indispensable for making, selling, and using Internet security, antivirus, storage, monitoring, and replication products . . . by aggregating and bundling a collection of patents for which, according to Intellectual Ventures, no

7

substitutes exist." (D.I. 10 at 11) The alleged practice is not one of the specific practices that constitute per se patent misuse and will have to be evaluated under the rule of reason.

In *Kobe, Inc. v. Dempsey Pump Co.*, 198 F.2d 416, 420-23 (10th Cir. 1952) ("*Kobe II*"), Kobe aggregated dozens of patents related to hydraulic oil well pumps, thereby controlling the entire market for hydraulic oil well pumps. When a competitor began making hydraulic pumps, Kobe sued for infringement. *See id.* The district court found one of the patents valid and infringed. However, the district court also found that Kobe had "employed its patent rights in furtherance and maintenance of its total monopoly of commerce in hydraulic pumps for oil wells" and that the "action was brought and . . . maintained by Plaintiffs in furtherance of the monopoly found to be held and exercised by Plaintiff . . . and was brought and . . . maintained with the intention and purpose of preventing competition in the subject field . . . ." *Kobe, Inc. v. Dempsey Pump Co.*, 97 F. Supp. 342, 349 (N.D. Okla. 1951) ("*Kobe I*"), *aff'd Kobe II*, 198 F.2d at 416. On appeal, the Tenth Circuit held:

> The infringement action and the related activities, of course, in themselves were not unlawful, and standing alone would not be sufficient to sustain a claim for damages which they may have caused, but when considered with the entire monopolistic scheme which preceded them we think, as the trial court did, that they may be considered as having been done to give effect to the unlawful scheme.

The district court held that Kobe "should take nothing upon their claims for relief for infringement of the United States Letters Patent above described for misuse of the said patents in violation of the policy of the United States as expressed in the Sherman and Clayton Acts." *Kobe I*, 97 F. Supp. at 355. The Tenth Circuit affirmed, holding that in light of the larger "monopolistic scheme," Kobe's aggregation and enforcement activities "may be considered as

8

having been done to give effect to the unlawful scheme." *Kobe II*, 198 F.2d at 425.

Defendant here alleges that Plaintiffs have monopolized "relevant markets for patent portfolios that it asserts are indispensable for making, selling, and using Internet security, antivirus, storage, monitoring, and replication products." (D.I. 10 at 11) Like in *Kobe*, Defendant's allegation here stems from Plaintiffs' aggregation of patents in the relevant market, patents that Plaintiffs assert against alleged infringers in the relevant industry in order to maintain a monopoly with anticompetitive results. Whether these allegations can be proven under a rule of reason analysis will require the resolution of factual and legal questions and cannot be done at this stage. Accordingly, Plaintiffs' motion to strike Defendant's affirmative defense of patent misuse by unlawful monopolization is also denied.

## II.     Plaintiffs' Motion for Leave to File Motion for Summary Judgment

Plaintiffs alternatively seek leave to file a motion for summary judgment on Symantec's patent-misuse defense. Plaintiffs' desired summary judgment motion relates primarily to Defendant's allegation that Plaintiffs engage in patent misuse by tying the patents-in-suit to irrelevant and unwanted patents in package licenses. Plaintiffs contend that this issue is ripe for summary judgment because (i) Plaintiffs had previously granted a license to the patents-in-suit in another case *without* insisting on a "portfolio" or "package" license, and (ii) Plaintiffs have been and are willing to offer a license to Symantec covering only the patents-in-suit in this case. (D.I. 41 at 3)

Defendant disputes IV's assertion that IV has "been and [is] willing to offer a license to Symantec covering the patents-in-suit alone in this case." (D.I. 48 at 5) Defendant contends that IV has "not offered such a license to Symantec." (*Id.* at 6) Because there is a factual dispute as

9

to whether IV improperly tied licensing the patents-in-suit in this case with unrelated patents, this issue does not appear to be amenable to resolution on summary judgment. More importantly, the Court perceives no persuasive reason to permit a motion for summary judgment on this one issue at this time. (*See* D.I. 21 ¶ 13) (setting date for case-dispositive motions)

Accordingly, the Court denies Plaintiffs' request for leave to file a motion for summary judgment on Defendant's patent misuse defense for Plaintiffs' alleged improper tying.

UNITED STATES DISTRICT JUDGE