IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and | ) | |
| INTELLECTUAL VENTURES II LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 13-440 (LPS) |
| | ) | |
| v. | ) | **REDACTED – PUBLIC VERSION** |
| | ) | |
| SYMANTEC CORPORATION and | ) | |
| VERITAS TECHNOLOGIES LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT OF PATENT INELIGIBILITY

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com

OF COUNSEL:

Dean G. Dunlavey
LATHAM & WATKINS LLP
650 Town Center Drive, Suite 2000
Costa Mesa, CA 92626
(714) 540-1235

*Attorneys for Defendants Symantec Corporation
and Veritas Technologies LLC*

Douglas E. Lumish
Lisa K. Nguyen
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94025
(650) 328-4600

Gabriel K. Bell
LATHAM & WATKINS LLP
555 11th Street NW, Suite 1000
Washington, DC  20004
(202) 637-2200

Originally Filed:  October 21, 2016
Redacted Version Filed:  October 28, 2016

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.      NATURE AND STAGE OF PROCEEDINGS ...................................................... 1

II.     SUMMARY OF ARGUMENT ............................................................................. 1

III.    STATEMENT OF FACTS .................................................................................... 2

IV.     ARGUMENT ........................................................................................................ 5

        A.      The Asserted Claims Are Directed to The Abstract Idea of Storing an Up-
                to-Date Backup Copy of Data Remotely ................................................. 6

        B.      The Asserted Claims Add Nothing Inventive to the Abstract Idea ...................... 10

                1.      The Asserted Independent Claim Adds Nothing Inventive ...................... 10

                2.      The Asserted Dependent Claims Add Nothing Inventive ......................... 15

        C.      The Asserted Claims Fail The Machine-Or-Transformation Test ....................... 16

        D.      IV Has Taken The Position That The Asserted Claims Are Broadly
                Preemptive ................................................................................................ 17

V.      CONCLUSION ..................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Accenture Global Servs. v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013)...................................................................................15

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
    --- F.3d ----, No. 2015-2080, 2016 WL 5335502 (Fed. Cir. Sept. 23, 2016)....................10, 12

*Affinity Labs v. DIRECTV, LLC*,
    --- F.3d ----, No. 2015-1845, 2016 WL 5335501 (Fed. Cir. Sept. 23, 2016).............5, 7, 12, 15

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ...................................................................................... *passim*

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
    788 F.3d 1371 (Fed. Cir. 2015)...................................................................................17

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016)...................................................................................13

*Bilski v. Kappos*,
    561 U.S. 593 (2010)...................................................................................5, 8, 16

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014)...................................................................................12

*CallWave Commc'ns. LLC v. AT&T Mobility, LLC*,
    C.A. No. 12-1701-RGA, 2016 WL 4941990 (D. Del. Sept. 15, 2016) ..................................10

*Cloud Satchel, LLC v. Amazon.com, Inc.*,
    76 F. Supp. 3d 553, 562 (D. Del. 2014), *aff'd* 626 Fed. Appx. 1010 (Fed. Cir.
    2016) ...................................................................................9

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
    776 F.3d 1343 (Fed. Cir. 2014)...................................................................................6, 8, 12, 16

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011)...................................................................................14, 16

*Data Engine Techs. LLC v. Google Inc.*,
    C.A. No. 14-115-LPS, 2016 WL 5667485 (D. Del. Sept. 29, 2016)............................9, 10, 14

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014)...................................................................................13

ii

*Dealertrack, Inc. v. Huber,*
   674 F.3d 1315 (Fed. Cir. 2012).................................................................6, 7, 14, 16

*Device Enhancement LLC v. Amazon.com, LLC,*
   C.A. No. 15-762-SLR, 2016 WL 2899246 (D. Del. May 17, 2016) .......................................14

*Electric Power Group, LLC v. Alstom S.A.,*
   830 F.3d 1350 (Fed. Cir. 2016)............................................................... *passim*

*Enfish, LLC v. Microsoft Corp.,*
   822 F.3d 1327 (Fed. Cir. 2016)...............................................................9

*Fairwarning IP, LLC v. Iatric Sys., Inc.,*
   --- F.3d ----, No. 2015-1985, 2016 WL 5899185 (Fed. Cir. Oct. 11, 2016).........10, 12, 13, 15

*Gottschalk v. Benson,*
   409 U.S. 63 (1972)...............................................................5, 14

*Intellectual Ventures I LLC v. Capital One Bank (USA),*
   792 F.3d 1363 (Fed. Cir. 2015)............................................................... *passim*

*Intellectual Ventures I LLC v. Symantec Corp.,*
   --- F.3d ---, No. 2015-1769, 2016 WL 5539870 (Fed. Cir. Sept. 30, 2016) .................... *passim*

*Internet Patents Corp. v. Active Network, Inc.,*
   790 F.3d 1343 (Fed. Cir. 2015)...............................................................6, 8, 14

*Kaavo Inc. v. Cognizant Tech. Sols. Corp.,*
   C.A. No. 14-1192-LPS-CJB, 2016 WL 476730 (D. Del. Feb. 5, 2016).................................14

*McRO, Inc. v. Bandai Namco Games Am. Inc.,*
   --- F.3d ----, No. 2015-1080, 2016 WL 4896481 (Fed. Cir. Sept. 13, 2016)...........................9

*Novo Transforma Techs. v. Sprint Spectrum L.P.,*
   C.A. No. 14-612-RGA, 2015 WL 5156526 (D. Del. Sept. 2, 2015), *aff'd*, 2016
   WL 5335040 (Fed. Cir. Sept. 23, 2016) ...............................................................9

*In re TLI Commc'n LLC Patent Litig.,*
   823 F.3d 607 (Fed. Cir. 2016)............................................................... *passim*

## STATUTES

35 U.S.C. § 101 ............................................................... *passim*

## OTHER AUTHORITIES

H.R.J. Res. 19, 36th Cong., 12 Stat. 116 (1860)...............................................................7

David M. Kennedy, THE LIBRARY OF CONGRESS WORLD WAR II COMPANION
(Simon & Schuster, 2007)................................................................................................7

Joshua Rothman, The Many Lives of Iron Mountain, THE NEW YORKER (Oct. 9,
2013) ...............................................................................................................................7

LIBRARY OF CONGRESS, http://www.loc.gov/about/fascinating-facts (last visited
Oct. 13, 2016) (Library of Congress started in 1800 and its mission includes
preservation) ...................................................................................................................7

## I.     NATURE AND STAGE OF PROCEEDINGS

Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively,

"IV") filed this second patent infringement action against Symantec Corporation ("Symantec")

on March 18, 2013, alleging infringement of three patents.  (D.I. 1.)  Veritas Technologies LLC

("Veritas") was added as a defendant in June 2016.  (D.I. 257.)  IV's infringement claims have

since been reduced to five method claims in a single patent, U.S. Patent No. 5,537,533 ("the '533

patent").  (Exh. 1.)[1]  The '533 patent expired in August 2014.

The Court issued its claim construction Memorandum Opinion (D.I. 214) and Order

(D.I. 215) on March 10, 2016.  Fact and expert discovery is closed.  Trial is set for April 10,

2017.  (D.I. 220.)  Defendants now move for summary judgment of patent ineligibility.

## II.    SUMMARY OF ARGUMENT

The asserted '533 patent claims are not patent eligible because they fail the familiar two-

step test of *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014).  ***First***, they are

directed to a classic abstract idea—the concept of storing up-to-date backup copies of data

remotely for safekeeping.  Humans used that abstract backup idea long before computers or

computer networks—such as when medieval monks copied and stored manuscripts for

safekeeping through the Dark Ages, when the Library of Congress was formed in the year 1800

as a repository for copies of the latest works, when banks copy and store critical records offsite

to ensure they survive in the event of a disaster, and when someone keeps an up-to-date copy of

their will in a safe deposit box.  In fact, the patent itself acknowledges that this is an "abstract"

idea that has long been performed "[i]n the mainframe computer environment" and the claims

merely purport to apply the abstract idea in a "client-server network environment" because of

---

[1] Referenced exhibits are attached to the Declaration of Lisa K. Nguyen, filed herewith.

alleged hardware and software incompatibilities between the two environments.  *See* '533 patent at 1:57-2:33.

It is well-established that "[a]n abstract idea does not become nonabstract by limiting the invention to a particular . . . technological environment, such as the Internet."  *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015) ("*IV-Capital One*").  And the claims here are even more abstract than other computer claims involving data storage concepts that courts have repeatedly found patent-ineligible.  *See, e.g.*, *Alice*, 134 S. Ct. at 2355-58 (performing intermediated settlement by copying, storing, and updating user data and in real time); *In re TLI Commc'n LLC Patent Litig.*, 823 F.3d 607, 611-15 (Fed. Cir. 2016) (obtaining image data, extracting classification information, and storing based on classification*)*.

*Second*, there is no inventive concept here that would render the asserted claims patent-eligible.  Those claims merely describe the abstract remote-backup idea in the context of a technological environment—copying the data to and from a network server and transmitting the data using a communication link.  They recite only admittedly conventional computer components (such as a "conventional communication link") and conventional computer functionality ("copying" and "sending") for performing those tasks.  But the Supreme Court and Federal Circuit have repeatedly held that adding such generic and purely functional computer features is insufficient to convert an abstract idea into patent-eligible subject matter.  *See, e.g.*, *Alice*, 134 S. Ct. at 2359-60; *TLI*, 823 F.3d at 613-15.

## III.    STATEMENT OF FACTS

The '533 patent, entitled "System and Method for Remote Mirroring of Digital Data from a Primary Network Server to a Remote Network server," is directed to keeping an up-to-date copy of important data at a safe location—*i.e.*, "remotely mirroring" data on a separate network server.  (*See* '533 patent at 1:8-15.)  As the patent describes, businesses have long backed up

computer data remotely to guard against "natural disasters," "acts of terrorism," and "computer hardware failures." (*Id.* at 1:19-46.)  For example, the patent explains that businesses using mainframe computers have deployed two such computers, one "at the original data site . . . connected by a communications link to a remote mainframe which is located at a safe distance from the original site.  Data written to the original mainframe's disks is also sent at essentially the same time to the communications link, and hence to the remote mainframe, where it is stored until needed." (*Id.* at 1:57-65.)  However, as companies today now depend heavily on client-server networks (such as the Internet), the patent states that there is a need to implement that same "abstract" electronic vaulting model in the network context.  (*Id.* at 2:2-3.)  The patent's purported innovation is to keep an up-to-date copy of critical data on a remote server ("remote mirroring") by making a copy of the data, transmitting the data to a remote server, and storing a copy of the "mirrored" data on the remote server.  (*Id.* at 6:58-62.)

The specification emphasizes that the purported invention uses "a conventional client-server network operating system," "conventional" software for "mirroring" the data, and "conventional" communication link technology (including generic "data transfer unit" components to transmit the data across the "conventional communication links" from the primary server to the backup server).  (*See id.* at abstract, 5:25-29, 6:4-6.)[2]  The specification

---

[2] IV successfully advocated for a generic construction of "data transfer unit":  "a combination of hardware and software, including a nonvolatile data buffer, with the ability to communicate with the operating system of a network server and to communicate across the communication link," which could be "merely a component within the primary network server."  (D.I. 214 at 5-6.)  In his infringement claim charts, IV's expert identifies a generic hard drive within the generic primary server as being the "nonvolatile data buffer" and a generic network connection as being the "communication link."  (Exh. 5 (Webster Op. Rep.), App. A1.)

also notes that the method "optionally" includes sending "an acknowledgement to the primary server indicating that the data has been received" (called a "spoof packet"). (*Id.* at 13:19-22.)[3]

Independent claim 25, from which the other asserted claims depend, is representative:

> 25. A method for remote mirroring of digital data, said method comprising the steps of:
>
> copying the data from a primary network server to a nonvolatile data buffer in a data transfer unit which is digitally connected to the primary network server, the primary network server including an operating system which is capable of accessing a nonvolatile server store, the data copied to the data transfer unit being a substantially concurrent copy of data which is being stored by the operating system in the nonvolatile server store of the primary network server;
>
> copying the data from the data transfer unit to an input end of a communication link which has an output end physically separated from its input end;
>
> generating and sending a spoof packet to the operating system of the primary network server; and
>
> copying the data from the output end of the communication link to a nonvolatile server store on a remote network server.

The asserted dependent claims (claims 26, 27, 29, and 33) add little to the basic remote backup concept. Claim 26 simply specifies the order of the method steps, claim 27 allows the user to select which event in the method triggers an acknowledgement that the operation was successfully completed, claim 29 recites buffering data as it is copied onto the communication link, and claim 33 recites compressing and decompressing the data. None of the claims recites any purportedly novel hardware or software.

---

[3] As construed by the Court, a "spoof packet" is just "a message created by a data transfer unit that is in the format of an acknowledgment to the operating system of a successfully completed write request." (D.I. 214 at 8.) The patent notes that it "is in the format of an acknowledgement that would be sent by a conventional hard disk drive controller when the operating system writes data to the hard disk." ('533 patent at 13:22-25.)

IV.    **ARGUMENT**

Patent-eligibility under § 101 is a question of law suitable for summary judgment. *See,*

*e.g., Alice*, 134 S. Ct. at 2352-53; *IV-Capital One*, 792 F.3d at 1366 (same).  Section 101

provides that "[w]hoever invents or discovers any new and useful process, machine,

manufacture, or composition of matter, or any new and useful improvement thereof, may obtain

a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101.  As

the Supreme Court has long recognized, § 101 "contains an important implicit exception" for

abstract ideas.  *See Alice*, 134 S. Ct. at 2354; *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972).

Such ideas are not patent eligible as a matter of law because they are basic tools in the

"storehouse of knowledge" that are "free to all . . . and reserved exclusively to none."  *Bilski v.*

*Kappos*, 561 U.S. 593, 602 (2010).  "'[M]onopolization of those tools through the grant of a

patent might tend to impede innovation more than it would tend to promote it,' thereby thwarting

the primary object of the patent laws."  *Alice*, 134 S. Ct. at 2354.  The Supreme Court's two-part

framework from *Alice* governs § 101's threshold eligibility standard.  *Id.* at 2355, 2360.

At *Alice* step one, the Court asks whether the "core" of the asserted claims is an abstract

idea, notwithstanding the claims' technological "verbiage."  *See Electric Power Group, LLC v.*

*Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (citation omitted); *Affinity Labs v. DIRECTV,*

*LLC*, --- F.3d ----, No. 2015-1845, 2016 WL 5335501, at *3 (Fed. Cir. Sept. 23, 2016) ("*Affinity-*

*DIRECTV*").  "[A]n abstract idea does not become nonabstract by limiting [it] to a . .

. technological environment, such as the Internet."  *Intellectual Ventures I LLC v. Symantec*

*Corp.*, --- F.3d ---, No. 2015-1769, 2016 WL 5539870, at *8 (Fed. Cir. Sept. 30, 2016) ("*IV-*

*Symantec*") (quoting *IV-Capital One*, 792 F.3d at 1366).

At *Alice* step two, the Court determines whether the other claim elements, individually or

collectively, add "significantly more" to the abstract idea—something "inventive"—that is

5

"sufficient to 'transform' the claimed abstract idea into a patent-eligible application." 134 S. Ct. at 2357 (citation omitted). Taking an abstract idea and adding "well-understood," "routine," or "conventional" activities—or limiting the idea to a particular technological environment or field of use—contributes nothing inventive and risks preempting the idea itself. *Id*. at 2359 (citation omitted). For example, patentees cannot merely recite generic computer or networking functions and components to perform the idea without specifying "how [they are] specially programmed to perform the steps claimed" (*Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012)) and "how the result is accomplished" (*Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1344, 1348 (Fed. Cir. 2015)). *See also, e.g.*, *Alice*, 134 S. Ct. at 2359-60 (claims reciting "purely function and generic" computer components and functionality are ineligible); *Electric Power*, 830 F.3d at 1355-56 (claims reciting "result-focused, functional" terms without "any assertedly inventive programming" or "particular ways of achieving" the goals are ineligible).

Under the *Alice* framework, the asserted patent claims are ineligible because they (1) are directed to an abstract idea (storing a up-to-date backup copy of data at a remote location) and (2) add only non-inventive elements (generic computer components and other routine features).

### A.   The Asserted Claims Are Directed to The Abstract Idea of Storing an Up-to-Date Backup Copy of Data Remotely

The asserted claims of the '533 patent are directed to the basic abstract idea of storing an up-to-date backup copy of data at a remote location. For purposes of § 101, each of the asserted patent claims can be evaluated collectively based on representative claim 25 because they are all "substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (citation omitted) (district court properly invalidated 242 computer claims based on representative claims). But the asserted claims are ineligible even if considered separately, as discussed below.

6

Representative claim 25 and the other asserted claims (each of which depends from claim 25) recite a method that breaks the remote-backup concept into four basic steps: (1) copy the current version of data from one location (a network server), (2) send the data to a remote location (a second network server), (3) send a confirmation of data receipt, and (4) copy the received data onto the remote network server.  ('533 patent at cl. 25, 26, 27, 29, 33.)  *See Affinity-DIRECTV*, 2016 WL 5335501, at *1 (Fed. Cir. Sept. 23, 2016) ("stripp[ing]" claims of "excess verbiage" to identify abstract idea); *Electric Power*, 830 F.3d at 1354 (identifying abstract idea at "at [the] core" of claims); *Dealertrack*, 674 F.3d at 1333 (examining claims in "simplest form" to identify "basic concept").  That the claims recite the concept in a particular technological context (a computer network) with generic computer components (such as network servers and a communication link) does not make it "any less abstract."  *IV-Capital One*, 792 F.3d at 1367.

The concept of storing up-to-date backup copies of data remotely is the sort of thing that humans have done for centuries, even before computers.  For example, the Library of Congress was started in 1800 to preserve copies of current works, Fort Knox housed a copy of the Constitution during World War II for safekeeping, and banks have long kept critical records offside to guard against disaster.[4]  Moreover, the '533 patent itself emphasizes that the remote-backup idea was even long-practiced *in the computer context*:  it was well-known that, when computer data is written on one computer's disks, it can "at essentially the same time" be sent

---

[4] *See* LIBRARY OF CONGRESS, http://www.loc.gov/about/fascinating-facts (last visited Oct. 13, 2016) (Library of Congress started in 1800 and its mission includes preservation); H.R.J. Res. 19, 36th Cong., 12 Stat. 116 (1860) (resolving that two copies of the works of the Exploring Expedition were "to be deposited in the library of Congress for preservation"); David M. Kennedy, THE LIBRARY OF CONGRESS WORLD WAR II COMPANION, 182 (Simon & Schuster, 2007) (Constitution, Declaration of Independence and other documents housed in Fort Knox during World War II); Joshua Rothman, The Many Lives of Iron Mountain, THE NEW YORKER (Oct. 9, 2013) (East River Savings Bank deposited records in the Iron Mountain storage facility for safekeeping during the Truman administration).

via a "communications link" to a remote computer where it can be "stored until needed" at "a safe distance from the original site."  ('533 patent at 1:57-65; *see supra* at 3.)  And the patent *concedes* that this concept provides an "abstract model" for the purported invention—which just consists of performing such data backup on a computer network.  ('533 patent at 2:3-9.)  The "fundamental" and "long-prevalent" concept of remotely storing backup copies of important data (computer or otherwise) is a "basic tool" in the "storehouse of knowledge" that is "free to all . . . and reserved exclusively to none."  *Alice*, 134 S. Ct. at 2356; *Bilski*, 561 U.S. at 602 (citations omitted).

The asserted '533 patent claims—and their underlying remote backup idea—are even more abstract than those at issue in *Alice*.  In that case, the Supreme Court held that the computer-implemented claims—which recited copying important financial data (the value of parties' assets) to a central location, continuously updating the records to ensure they are current, and then issuing simultaneous instructions to complete transactions if the parties have sufficient resources—were directed to the abstract idea of intermediated settlement.  Likewise, the claims here—which similarly involve copying important information to a separate location and keeping it up-to-date—are, at root, directed to an abstract idea.

The claims in this case are also indistinguishable from numerous other computer-implemented processes for copying, transmitting, and storing data that the Federal Circuit and this Court have found to be abstract at *Alice* step one (and ultimately patent-ineligible)—including claims for obtaining data, extracting classification information, and storing based on classification (*TLI*, 823 F.3d at 611-15), storing user-entered Internet form data to prevent data loss (*Internet Patents Corp.*, 790 F.3d at 1348), and collecting, recognizing, and storing data (*Content Extraction*, 776 F.3d at 1347).  *See also*, *e.g.*, *IV-Symantec*, 2016 WL 5539870, at *3,

*8 (processing data files based on their characteristics and screening for computer viruses); *Novo Transforma Techs. v. Sprint Spectrum L.P.*, No. 14-612-RGA, 2015 WL 5156526, at *4 (D. Del. Sept. 2, 2015) ("There is nothing inventive about . . . having the system 'automatically' notify the sender of receipt.  As the Federal Circuit held in [*Ultramercial Inc. v. Hulu LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014)], these claim elements 'simply instruct the practitioner to implement the abstract idea with routine, conventional activity.'"), *aff'd*, 2016 WL 5335040 (Fed. Cir. Sept. 23, 2016).  Likewise, this Court has found that claims for collecting spreadsheet data, recognizing changes, and storing information about the changes (*Data Engine Techs. LLC v. Google Inc.*, No. 14-115-LPS, 2016 WL 5667485, at *7 (D. Del. Sept. 29, 2016)) and "cataloguing documents to facilitate their retrieval from storage in the field of remote computing" (*Cloud Satchel, LLC v. Amazon.com, Inc.*, 76 F. Supp. 3d 553, 562 (D. Del. 2014), *aff'd* 626 Fed. Appx. 1010 (Fed. Cir. 2016)), are directed to abstract ideas.  In each case, the courts recognized that, no matter how the claims were broken down or recited in a particular computer "technological environment" (*IV-Symantec*, 2016 WL 5539870, at *4, at *8; *IV-Capital One*, 792 F.3d at 1366), the underlying ideas were nonetheless abstract data-processing concepts.  The remote backup storage concept at issue here—claimed as basic steps for copying, transmitting, and saving data—is equally abstract.

Far from the type of "specific . . . improvement in computer capabilities" that might confer patent eligibility, *see Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016); *McRO, Inc. v. Bandai Namco Games Am. Inc.*, --- F.3d ----, No. 2015-1080, 2016 WL 4896481 (Fed. Cir. Sept. 13, 2016), the asserted '533 patent claims and specifications "fail[] to provide any technical details for the tangible components, but instead predominately describe[] the system and methods in purely functional terms," *TLI*, 823 F.3d at 612 (distinguishing

9

*Enfish*); *see also Fairwarning IP, LLC v. Iatric Sys., Inc.*, --- F.3d ----, No. 2015-1985, 2016 WL 5899185, at *3-4 (Fed. Cir. Oct. 11, 2016) (distinguishing *McRO* and *Enfish*); *IV-Symantec*, 2016 WL 5539870, at *3 n.5, *5, *9 (same).[5]  The claimed steps are recited at a high level of generality—such as copying data from one place to another or sending a message acknowledging completion—that "do no more than describe a desired function or outcome, without providing any limiting detail" to "confine[] the claim to a particular solution."  *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, --- F.3d ----, No. 2015-2080, 2016 WL 5335502, at *3 (Fed. Cir. Sept. 23, 2016) ("*Affinity-Amazon*") (same).  The claims do not recite "an improvement in computers as tools," but instead "use computers as tools" to perform an abstract idea.  *Electric Power*, 830 F.3d at 1354.

## B.  The Asserted Claims Add Nothing Inventive to the Abstract Idea

At *Alice* step two, the asserted claims add nothing inventive to the abstract idea of storing up-to-date backup copies of data remotely.  *See Alice*, 134 S. Ct. at 2359-60.  At most, they recite implementing the abstract idea on a computer network using generic computer components and functions and other insignificant features—which the Supreme Court and Federal Circuit have found insufficient to convert an abstract idea into a patent-eligible application.

### 1.  The Asserted Independent Claim Adds Nothing Inventive

The asserted independent claim (claim 25) adds nothing inventive to the abstract idea of the '533 patent.  The claims' additional elements, individually or collectively, do nothing more than recite the abstract idea in a particular technological environment, which is insufficient.

Claim 25 refers to conventional computer components (such as a "network server," "nonvolatile data buffer," "data transfer unit," "communication link," and "spoof packet")

---

[5] *See also Data Engine Techs.*, 2016 WL 5667485, at *3 (distinguishing *Enfish*); *CallWave Commc'ns. LLC v. AT&T Mobility, LLC*, No. 12-1701-RGA, 2016 WL 4941990, at *5 (D. Del. Sept. 15, 2016) (same).

performing generic computer functions (such as copying, sending, and storing data).  ('533 patent at cl. 25, 26, 27, 29, 33.)  The patent itself recognizes—and IV's expert, Mr. Webster concedes—that those are conventional and generic.  (*See, e.g.*, '533 patent at 6:58-63 (invention employs "a conventional communication link" and relies on the utility of a "conventional client-server network operating system"); *supra* at 3; Exh. 8 (Webster Dep.) at 212:10-213:8 (agreeing that the '533 patent did not invent network servers, nonvolatile data buffers, communication links, or spoof packets).)  *See also IV-Symantec*, 2016 WL 5539870, at *6 ("[t]he written description is particularly useful in determining what is well-known or conventional").  This Court's claim construction order also confirms that the claimed components are conventional:  a "data transfer unit" is "a combination of hardware and software . . . with the ability to communicate . . . across the communication link," and a "spoof packet" is simply "a message . . . acknowledg[ing] . . . a successfully completed write request."  (D.I. 214 at 5, 8.)  Such conventional computer implementation is precisely the sort that the Supreme Court and Federal Circuit have held to be insufficient under § 101.

In *Alice*, for example, the Supreme Court held that implementing an abstract idea on a computer system with "purely functional and generic" components that "[n]early every computer will include" (such as "a 'data processing system' with a 'communications controller' and 'data storage unit'") provides no meaningful limitation beyond generally linking the use of the abstract idea to "a particular technological environment."  134 S. Ct. at 2360 (citation omitted).  The Court further held that receiving and storing data are "the most basic functions of a computer"—"'well-understood, routine, conventional activit[ies]' previously known to the industry" that are insufficient under § 101.  *Id*. at 2359 (alteration in original) (citation omitted).

Similarly, in *TLI*, the Federal Circuit found ineligible claims reciting conventional features such as "transmitting" digital image data "to a server" and "storing the digital images in the server" that were recited in "purely functional terms." 823 F.3d at 610, 612. Likewise, the claims in cases like *Ultramercial* and *buySAFE* were patent-ineligible even though they were performed by a computer over the Internet because "transfer of content between computers is merely what computers do," *Ultramercial*, 772 F.3d at 717, and "receiv[ing] and send[ing] . . . information over a network . . . is not even arguably inventive," *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014).

And the Federal Circuit has held similarly basic computer components and functions to be insufficient in several other cases. *See, e.g.*, *Affinity-DIRECTV*, 2016 WL 5335501, at *7-8 ("storage medium and a graphical user interface" used to "transmit[] and receiv[e] signals" and "buffer[] content"); *Affinity-Amazon*, 2016 WL 5335502, at *5 ("network based media managing system that maintains a library of content"); *IV-Capital One*, 792 F.3d at 1367-71 ("communications medium," "broadly including the Internet and telephone networks," to send user information); *Content Extraction*, 776 F.3d at 1347-48 ("receiving," "recognizing," and "storing" data).

The same conclusion follows here as to claim 25's conventional computer features. Transmitting and storing data using servers and conventional network communications technology is non-inventive, as in the cases discussed. *See, e.g.*, *Alice*; *TLI*; *IV-Capital One*; *supra* at 3-4. Buffering content and sending notifications ("spoof packets") are also non-inventive. *See, e.g.*, *Affinity-DIRECTV*, 2016 WL 5335501, at *8 ("buffer[ing] content"); *Fairwarning IP*, 2016 WL 5899185, at *4-5 (sending "notification"); *IV-Capital One*, 792 F.3d 1367 (same). Nor does the requirement that the data be "substantially concurrent" make the

claims patent-eligible.[6]  For example, "displaying concurrent visualization," "analyzing events in real-time," and updating "dynamic stability metrics" did not make the claims eligible in *Electric Power*, 830 F.3d at 1352, and "update[ing] the shadow records in real time" did not make the claims eligible in *Alice*, 134 S. Ct. at 2352, 2356.

Even when these basic components and functions are viewed "as an ordered combination," they do not reveal a "specific improvement[] in the recited computer technology" that "go[es] beyond 'well-understood, routine, conventional activit[ies].'" *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016) (citation omitted).  The arrangement of method steps forth by the independent claim does not purport to improve conventional software or hardware used to copy, transmit data, or store data.  *Cf. id.* at 1350.  The claim merely recites the performance of an abstract idea in a particular technological context—which "cannot confer patent eligibility."  *TLI*, 823 F.3d at 615; *see also, e.g.*, *Alice*, 134 S. Ct. at 2359-60; *IV-Symantec*, 2016 WL 5539870, at *4; *Electric Power*, 830 F.3d 1354-56; *IV-Capital One*, 792 F.3d at 1366.  Because claim 25 "simply required the performance of the abstract idea . . . on generic computer components using conventional computer activities," it fails under § 101.  *Bascom*, 827 F.3d at 1351; *see, e.g., Fairwarning IP*, 2016 WL 5899185, at *6 (distinguishing *Bascom*); *IV-Symantec*, 2016 WL 5539870, at *5 (same); *Electric Power*, 830 F.3d at 1355-56 (same).[7]

Moreover, asserted claim 25 also is fundamentally flawed because it "does not specify how the computer hardware and [software] are specially programmed to perform the steps

---

[6] The Court construed "substantially concurrent" to mean "not separated in time except as a result of processing delays."  (D.I. 214 at 7.)

[7] *Cf. DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256-59 (Fed. Cir. 2014) (eligible claims recited innovative, detailed solution to uniquely computer-centric problem); *Bascom*, 827 F. 3d, at 1350 (eligible claims recited "specific, discrete implementation" with "particular arrangement of elements" that was a "technical improvement").

claimed." *Dealertrack*, 674 F.3d at 1333 (citation omitted).  Instead, claim 25 is drafted in highly generalized functional language and only expresses a general methodology for storing up-to-date backup copies of data remotely.  (*See*, *e.g.*, '533 patent at cl. 25 (reciting "copying the data" and "generating and sending a spoof packet")).)  At most, it recites "a 'software' 'brain' tasked" with performing the abstract idea.  *IV-Capital One*, 792 F.3d at 1371.  Such "vague, functional" terms, "devoid of technical explanation as to how to implement the invention," are insufficient to confer patent-eligibility.  *TLI*, 823 F.3d at 615; *see also*, *e.g.*, *IV-Symantec*, 2016 WL 5539870, at *5 (ineligible claims provided no "specific or limiting recitation of . . . improved computer technology"); *Electric Power*, 830 F.3d at 1356 (ineligible claims were "essentially result-focused" and "functional").[8]

    In fact, as discussed, the claims' core concept (storing up-to-date copies of backup data remotely) has long been performed with or without computers.  That further confirms that implementing the idea in a computer environment does not meaningfully limit the claims.  *See Benson*, 409 U.S. at 67 (finding computer-implemented claims ineligible where underlying abstract idea was performable by humans without a computer); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366,  1373 (Fed. Cir. 2011) (same).

---

[8] *See also Data Engine Techs.*, 2016 WL 5667485, at *6 (ineligible claims "merely describe the abstract idea . . . and say 'apply it' on a generic computer" and holding that "this is not an inventive concept"); *Kaavo Inc. v. Cognizant Tech. Sols. Corp.*, No. 14-1192-LPS-CJB, 2016 WL 476730, at *8 (D. Del. Feb. 5, 2016) (ineligible claim "contain[ed] almost 'no restriction on how' the claim's six 'determining,' 'sending' or 'receiving' steps are to be accomplished" and instead just "'describe[d] the [sought-after] effect or result]'" (quoting *Internet Patents*, 790 F.3d at 1348)), *adopted by* 2016 WL 1268308 (D. Del. Mar. 31, 2016); *Device Enhancement LLC v. Amazon.com, LLC*, No. 15-762-SLR, 2016 WL 2899246, at *10 (D. Del. May 17, 2016) (ineligible claims "use[d] computerized devices . . . in conventional ways  . . . without delineating any particular way of putting the ideas into practice").

In sum, viewed both individually and as an ordered combination, claim 25's steps add nothing inventive and, at most, limit the abstract idea to a particular technological environment—computer networks—which is insufficient under § 101.

> 2.    The Asserted Dependent Claims Add Nothing Inventive

The asserted dependent claims (claims 26, 27, 29, and 33) also add nothing inventive: they append insignificant features that courts have held insufficient under § 101.

Claim 26 specifies the order of two of the steps, providing that the acknowledgement message occurs before the data is copied to the remote server.  But that is not inventive—it just restates the order already provided in claim 25 itself.  Claim 27 specifies that sending the acknowledgement message occurs in response to one of a few possible user-selected triggering events (all of which are steps recited in claim 25).  That also does not make the claim eligible. *See*, *e.g.*, *Fairwarning IP*, 2016 WL 5899185, at *4-5 (reciting user-selected "criterion" to trigger "notification" is non-inventive); *IV-Capital One*, 792 F.3d 1367 (reciting "user-selected pre-set limits on spending" to trigger "a notification to the user" is non-inventive); *Accenture Global Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336, 1338-39 (Fed. Cir. 2013) (specifying that steps are "triggered" by certain "events" is non-inventive).

Claim 29 accounts for limited bandwidth of the communication link by reciting buffering at least some data within the data transfer unit while data is being copied to the communication link, and claim 33 recites compressing data prior to copying it onto the communication link and decompressing the data after it has been copied off of the communication link.  But those, too, add only conventional generic computer components and functions.  *See Affinity-DIRECTV*, 2016 WL 5335501, at *8 ("buffer[ing]" data adds nothing inventive); *TLI*, 823 F.3d at 614-15 (compressing and decompressing data adds nothing inventive); Exh. 8 (Webster Dep.) at 213:18-214:3 (compressing and decompressing were conventional).

Moreover, like representative claim 25, none of the asserted dependent claims discloses "how the desired result is achieved." Instead, the claims are written in largely functional terms. *Electric Power*, 830 F.3d 1350, 1354-56; *see supra* at 4; *see also Content Extraction*, 776 F.3d at 1349 (dependent claims added only conventional computer functions that did not make the claims eligible even though the claims "may have a narrower scope than the representative claims"). The additional limitations in the asserted dependent claims add nothing significant enough to convert the abstract data backup idea to a patent-eligible application.

### C. The Asserted Claims Fail The Machine-Or-Transformation Test

The asserted '533 patent claims also fail the so-called "machine-or-transformation test"— which, although not the "sole test," can be a "useful clue" in finding claims patent-ineligible. *Bilski*, 561 U.S. at 603; *Ultramercial*, 772 F.3d at 716. First, the claims are not tied to "a particular machine" (*Ultramercial*, 772 F.3d at 716 ) because their root concept (storing an up-to-date backup copy remotely) does not require electronic devices at all and the claims recite only generic functions with no implementation details. *See supra* at 7, 9-16. That is the type of incidental use of a machine that the Federal Circuit has repeatedly found wanting. *See, e.g.*, *Ultramercial*, 772 F.3d at 716-17; *Dealertrack*, 674 F.3d at 1333-34; *CyberSource*, 654 F.3d at 1373, 1375. Second, the claims do not "transform[] a particular article into a different state or thing." *Ultramercial*, 772 F.3d at 716 (citation omitted). "The mere manipulation or reorganization of data . . . does not satisfy the transformation prong," *CyberSource*, 654 F.3d at 1375, and the claims here do no more than that. That further confirms the asserted claims are ineligible under § 101. *See Bilski*, 561 U.S. at 603; *Ultramercial*, 772 F.3d at 716.

16

**D.      IV Has Taken The Position That The Asserted Claims Are Broadly Preemptive**

Lastly, while preemption is not the test for patent-eligibility (*see Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015)), it should be noted that IV has taken the position that the asserted claims are broadly preemptive.  In particular, in attempting to maximize his damages opinion, and to justify his reliance upon the Mitsubishi–Veritas software development agreement ("SDLA") and asset purchase agreement ("APA"), Mr. Wagner assumed that the software covered by those agreements must have infringed the '533 patent.  (Exh. 6 (Wagner Op. Rep.), ¶ 126.)  He also assumed, based on IV's technical expert's opinion, that "there are no acceptable non-infringing substitutes in the marketplace," and that there is no "acceptable, non-infringing alternative that provides the benefits of the Patents-in-Suit."  (*Id.*, ¶¶ 249-50; *see* Exh. 5 (Webster Op. Rep.), ¶ 100.)  For his part, Mr. Webster opined that "the software [covered by the SDLA and APA] could not meet its sole purpose of 'add[ing] network mirroring capability' without the teachings of the '533 patent."  (Exh. 5 (Webster Op. Rep.), ¶ 121.)  Accordingly, to the extent that "preemption may signal patent ineligible subject matter" (*Ariosa*, 788 F.3d at 1379), IV's own experts have provided further grounds for finding the asserted claims to be ineligible.

**V.      <u>CONCLUSION</u>**

For the foregoing reasons, Defendants respectfully request that the Court grant summary judgment that each of the asserted claims is not patent-eligible under § 101.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com

OF COUNSEL:

Dean G. Dunlavey
LATHAM & WATKINS LLP
650 Town Center Drive, Suite 2000
Costa Mesa, CA 92626
(714) 540-1235

Douglas E. Lumish
Lisa K. Nguyen
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94025
(650) 328-4600

Gabriel K. Bell
LATHAM & WATKINS LLP
555 11th Street NW, Suite 1000
Washington, DC  20004
(202) 637-2200

October 21, 2016

*Attorneys for Defendants Symantec Corporation and Veritas Technologies LLC*