IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and | ) | |
| INTELLECTUAL VENTURES II LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 13-440 (LPS) |
| | ) | |
| v. | ) | **REDACTED – PUBLIC VERSION** |
| | ) | |
| SYMANTEC CORPORATION and | ) | |
| VERITAS TECHNOLOGIES LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
*DAUBERT* MOTION TO EXCLUDE THE TESTIMONY OF
INTELLECTUAL VENTURES' DAMAGES EXPERT, MICHAEL WAGNER**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com

OF COUNSEL:

Dean G. Dunlavey
LATHAM & WATKINS LLP
650 Town Center Drive, Suite2000
Costa Mesa, CA 92626
(714) 540-1235

*Attorneys for Defendants Symantec Corporation
and Veritas Technologies LLC*

Douglas E. Lumish
Lisa K. Nguyen
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94025
(650) 328-4600

Gabriel K. Bell
LATHAM & WATKINS LLP
555 11th Street NW, Suite 1000
Washington, DC  20004
(202) 637-2200

Originally Filed:  October 21, 2016
Redacted Version Filed:  October 28, 2016

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................ ii

I.     NATURE AND STAGE OF PROCEEDINGS ....................................................1

II.    SUMMARY OF ARGUMENT .............................................................................1

III.   STATEMENT OF FACTS ....................................................................................3

IV.   LEGAL STANDARDS .........................................................................................4

V.    ARGUMENT ........................................................................................................6

      A.    Mr. Wagner's Opinions Should be Excluded Because He Lacks Any
             Foundation For Linking the Agreements To The Asserted Patent Claims .............6

      B.    The Bundled Agreements On Which Mr. Wagner Relies Are Not
             Comparable To The Hypothetical License And Thus Should Be Excluded ..........8

VI.   CONCLUSION...................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*DataQuill Ltd. v. High Tech Computer Corp.*,
    887 F. Supp. 2d 999 (S.D. Cal. 2011)................................................................6, 10

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993).........................................................................................5

*ICU Med., Inc. v. RyMed Techs., Inc.*,
    752 F. Supp. 2d 486 (D. Del. 2010)........................................................................4

*Intellectual Ventures I LLC v. Xilinx, Inc.*,
    C.A. No. 10-1065-LPS, 2014 WL 1814384 (D. Del. April 14, 2014).....................5

*Kumho Tire Co. Ltd. v. Carmichael*,
    526 U.S. 137 (1999).........................................................................................5

*LaserDynamics, Inc. v. Quanta Comp., Inc.*,
    694 F.3d 51 (Fed. Cir. 2012)...........................................................................6, 7

*Lucent Tech., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009)....................................................................6, 9, 10

*Masimo Corp. v. Philips Elec. N. Am. Corp.*,
    C.A. No. 09-80-LPS-MPT, 2013 WL 2178047 (D. Del. May 20, 2013)
    *adopted in relevant part by* 62 F. Supp. 3d 368 (D. Del. 2014) ...........................10

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    711 F.3d 1348 (Fed. Cir. 2013)...........................................................................2

*ResQNet v. Lansa*,
    594 F.3d 860 (Fed. Cir. 2010)........................................................................ *passim*

*TracBeam, LLC v. AT&T, Inc.*,
    No. 6:11-CV-96, 2013 WL 6175372 (E.D. Tex. Nov. 25, 2013)..........................10

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)........................................................................5, 9

*Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*,
    609 F.3d 1308 (Fed. Cir. 2010).............................................................................9

## RULES

Fed. R. Evid. 403 ....................................................................................................5

Fed. R. Evid. 702 .......................................................................................................................4

## I.     NATURE AND STAGE OF PROCEEDINGS

Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively, "IV") filed this patent infringement action on March 18, 2013 against Symantec Corporation ("Symantec"), alleging infringement of three patents.  (D.I. 1.)  Veritas Technologies LLC ("Veritas") was added as a defendant in June 2016.  (D.I. 257.)  IV's infringement claims have since been reduced to five method claims in a single patent, U.S. Patent No. 5,537,533 ("the '533 patent") (Exh. 1).[1]  The '533 patent expired in August 2014.  IV contends that Defendants' customers infringed the method claims if and when they used a software program called Veritas Volume Replicator ("VVR").

IV's damages expert, Michael Wagner, has opined that the appropriate royalty damages for the alleged infringement of the '533 patent is 10% of the revenues for Defendants' sales of VVR.  Defendants have moved to exclude Mr. Wagner's testimony in its entirety.  This is Defendants' opening brief in support of that motion.

## II.    SUMMARY OF ARGUMENT

Mr. Wagner's testimony should be excluded because his methodologies and opinions are unreliable and unprincipled.  They are based on two agreements:  a May 1997 software development license agreement and an October 2002 software sales agreement.  In order to rely on those agreements, Mr. Wagner assumed that the software provided by those agreements infringed the '533 patent.  Critically, Mr. Wagner admits that without these agreements he has no basis for his opinions.  As set forth below, Mr. Wagner cannot rely on these agreements.

***First***, the assumption that the software at issue in either of those agreements infringed the '533 patent is pure speculation.  Mr. Wagner assumed that the software practiced the '533 patent,

---

[1] The referenced exhibits are attached to the Declaration of Lisa K. Nguyen, filed herewith.

1

and expressly relied on IV's technical expert, Bruce Webster, to support that assumption.  But Mr. Webster has admitted that he cannot support that assumption.  For that reason alone, Mr. Wagner's opinions should be excluded.

*Second*, the May 1997 and October 2002 agreements are both bundled agreements of the type the Federal Circuit has specifically rejected as proper baseline agreements for a hypothetical patent license.  Here, as in *ResQNet v. Lansa*, the "re-bundling licenses are absolutely silent on any relation to the patents in suit. . . . [and instead deal with] training, marketing, and customer support services.  The re-bundling licenses simply have no place in this case."  594 F.3d 860, 871 (Fed. Cir. 2010).

*Third*, for the reasons set forth in Symantec's motion for summary judgment of no damages, filed herewith and incorporated by reference, Mr. Wagner's opinions are unreliable because neither he nor IV has any evidence that any of Defendants' customers actually configured and used VVR during the relevant damages period, let alone a basis for ascertaining the number of such customers.  Thus, there is no evidence to support an appropriate royalty base.

Given these fundamental defects with Mr. Wagner's methodology, "we are left with an expert opinion derived from unreliable data and built on speculation. . . .  Such unreliable testimony frustrates a primary goal of expert testimony in any case, which is meant to place experience from professional specialization at the jury's disposal, not muddle the jury's fact-finding with unreliability and speculation."  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1374 (Fed. Cir. 2013).  This is not a case where Mr. Wagner should be allowed to testify, with the defects in his methodology going to the weight, rather than the admissibility, of his testimony.  This is a case in which Mr. Wagner's testimony should be excluded in its entirety.

III.   **STATEMENT OF FACTS**

Mr. Wagner issued his first damages report on May 5, 2016 (Exh. 6 (Wagner Op. Rep.)) and a reply report on August 22, 2016 (Exh. 15 (Wagner Reply Rep.)).  To arrive at his ultimate damages opinion, Mr. Wagner used two agreements to determine what he terms his "baseline royalty rate":  a May 1997 software license agreement for software that Mitsubishi developed for Veritas (the "SDLA") and an October 2002 asset purchase agreement concerning the then-existing version of that software (the "APA").  (Exh. 6 (Wagner Op. Rep.), ¶¶ 100-101, 116.) Those contracts pre-date the July 2006 date of the hypothetical negotiation by nine years and four years, respectively.  (*Id.*, ¶ 80.)

Under the SDLA (Exh. 16), Veritas paid ████████████████████████ for certain assets.  As Mr. Wagner summarized:



(Exh. 6 (Wagner Op. Rep.), ¶ 132.)  The SDLA makes no reference to the '533 patent.

Under the APA (Exh. 17), Veritas paid ██████████████████████ for certain assets.  As Mr. Wagner summarized:



(Exh. 6 (Wagner Op. Rep.), ¶ 132.)  Like the SDLA, the APA makes no reference to the '533 patent.

IV's technical expert Mr. Webster expressly recognized that it is "impossible to determine with specificity how the 'Network Mirror' software described in the license

3

functioned in practice." (Exh. 5 (Webster Op. Rep.), ¶ 121.) Yet despite this acknowledgement (and ignoring his own admitted lack of qualifications to provide technical opinions in this case (Exh. 4 (Wagner Dep.) at 23:3-5)), Mr. Wagner made the critical assumption (and the statement) that "the licensed product in the APA infringes the Patent[]-in-Suit." (Exh. 6 (Wagner Op. Rep.), ¶ 126.) Based on that assumption, ████████████████████████████████████ ████████████████████████████████

     Subsequently, Mr. Wagner made no quantitative adjustments to this ████ baseline rate. Although Mr. Wagner recognized that there were "differences in the baseline agreement and the hypothetical license" and that he was required to account "for the actual use made of the Patent[]-in-Suit," Mr. Wagner determined that no adjustments were necessary. (*Id.,* ¶ 140) Further, although Mr. Wagner recognized that the "APA is not a license agreement" (Exh. 4 (Wagner Dep.) at 97:13-14) and that it included "additional assets that would [not] have been included in the hypothetical patent license for the '533 patent" (*id.* at 93:12-16), Mr. Wagner determined that he did not need to quantitatively apportion any value to these additional assets. Based on this supposed "methodology," he intends to offer an opinion that the hypothetical license would have resulted in ██████████████████████████████████ ████████████████████████ This motion seeks the exclusion of that proffered opinion.

## IV.   **LEGAL STANDARDS**

     In deciding questions of admissibility of expert testimony under Fed. R. Evid. 702, the Court must consider whether the proponent of the testimony has established that "(1) an expert witness is qualified to testify about the subject matter; (2) the methodology the expert uses is reliable; and (3) the opinion fits the facts of the case." *See ICU Med., Inc. v. RyMed Techs., Inc.*, 752 F. Supp. 2d 486, 495 (D. Del. 2010). "The party offering the expert testimony bears the burden of proving that the testimony is admissible, . . . which requires proof, by a preponderance

of the evidence, that the testimony is reliable." *Intellectual Ventures I LLC v. Xilinx, Inc.*, C.A. No. 10-1065-LPS, 2014 WL 1814384, at *2 (D. Del. April 14, 2014) ("*Xilinx*") (excluding Mr. Wagner's proffered opinions as "unreliable and irrelevant") (citations omitted).

Fed. R. Evid. 403, which bars evidence that is prejudicial, confusing, or misleading, also guides the Court in its gatekeeping function.  Indeed, because expert testimony "can be both powerful and quite misleading because of the difficulty in evaluating it . . . the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) (citation/quotations omitted).  "The objective of [*Daubert's* gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony.  It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

The *Daubert* standard applies to damages expert opinions like any other expert testimony. *See, e.g., Xilinx*, 2014 WL 1814384, at *2.  The Federal Circuit repeatedly has emphasized that a patent holder must present a competent and realistic economic analysis in order to support a damages award. *See, e.g., Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) (citation omitted) (the patentee "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative").

A reasonable royalty analysis may not be premised on licenses that are "not commensurate to the patent in suit." *ResQNet.com*, 594 F.3d at 871.  Software supply

agreements and bundling licenses are not comparable to patent licenses.  *Id.* at 870 (vacating

damages award because the patentee's expert had relied upon ResQNet licenses that "furnished

finished software projects and source code, as well as services such as training, maintenance,

marketing, and upgrades, to other software companies").  *Accord DataQuill Ltd. v. High Tech*

*Computer Corp.*, 887 F. Supp. 2d 999, 1022 (S.D. Cal. 2011) ("The testimony of a damages

expert in a patent suit who relies on non-comparable licenses in reaching his royalty rate should

be excluded.")

## V.    ARGUMENT

### A.    Mr. Wagner's Opinions Should be Excluded Because He Lacks Any Foundation For Linking the Agreements To The Asserted Patent Claims

Mr. Wagner's testimony should be excluded because he does not, and cannot, properly tie

the agreements that form the bases for the entirety of his opinions to the asserted patent claims.

"[L]icenses relied on by the patentee in proving damages [must be] sufficiently comparable to

the hypothetical license at issue in suit."  *Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301,

1325 (Fed. Cir. 2009).  "[A]lleging a loose or vague comparability between different

technologies or licenses does not suffice."  *LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d

51, 79 (Fed. Cir. 2012).  The license must be "***commensurate*** to the patent in suit."  *ResQNet*,

594 F.3d at 871 (emphasis added); *see also LaserDynamics*, 694 F.3d at 79 ("[T]he district court

must consider licenses that are commensurate with what the defendant has appropriated.  If not, a

prevailing plaintiff would be free to inflate the reasonable royalty analysis with conveniently

selected licenses without an economic or other link to the technology in question.") (quotations

omitted).

Here, Mr. Wagner has not established the necessary connection between the software

covered by the 1997 SDLA and 2002 APA and the "economic demand for the claimed

invention." *LaserDynamics*, 694 F.3d at 77.  **First**, although Mr. Wagner explicitly assumes that "the licensed product in the APA infringes the Patents-in-Suit, (Exh. 6 (Wagner Op. Rep.), ¶ 126), he is not qualified to offer such an opinion.  Tellingly, even IV's technical expert contradicted Mr. Wagner, as Mr. Webster acknowledged that "it is **impossible** to determine with specificity how the 'Network Mirror' software described in the [SDLA] license functioned in practice."  (Exh. 5 (Webster Op. Rep.), ¶ 121 (emphasis added).)  Instead, Mr. Webster opined "[g]iven the high importance of the '533 patent's **teachings** to the functionality described in the license, a clear link exists between the technology described in the Mitsubishi license and **the teachings** of the '533 patent."  (*Id*. (emphases added).)

Even crediting Mr. Webster's opinion as to the supposed "teachings" of the '533 patent, "teachings" have no relevance to damages.  Rather, the technology of the license must be commensurate with **the claimed invention**.  *ResQNet*, 594 F.3d at 871; *see also LaserDynamics*, 694 F.3d at 79.  Here, the asserted claims contain numerous specific elements, including a nonvolatile data buffer for storing a substantially concurrent copy of the data being stored in the local server store, and a spoof packet.  Those elements are critically important to the invention— according to Mr. Webster, they "describe[] the improvement of the '533 Patent over the prior art."  (Exh. 8 (Webster Dep.) at 239:9-13.)  Yet, during his deposition, Mr. Webster agreed that his report did not identify either element in the documentation for the Mitsubishi software covered by the SDLA and the APA.  (*Id.* at 240:22-241:6.)  Similarly, Mr. Wagner agreed that he did not know whether either version of that software included a nonvolatile data buffer or spoof packets.  (Exh. 4 (Wagner Dep.) at 88:15-23.)  Thus, nothing in the record establishes any relation between the technology of the SDLA and APA with the economic footprint of the asserted patent claims.

**Second**, Mr. Wagner offers no evidence that limits remote mirroring to the implementation claimed in the '533 patent.  IV's technical expert admitted that remote mirroring can be implemented in different ways.  (Exh. 8 (Webster Dep.) at 238:18-21; 242:11-16.)  Moreover, there are at least seven remote mirroring products competing in the market.  (Exh. 18 (Webster Dep. Exh. 14) at SYMIV2-0413652.)  Mr. Webster did not perform an infringement analysis as to any of those products (Exh. 8 (Webster Dep.) at 142:1-143:3) and thus had no basis to assume that all remote mirroring software requires the functionality allegedly "taught" by the '533 patent, much less the functionality claimed by the asserted claims.  Indeed, when it was expedient for him to do so, Mr. Wagner took exactly the opposite position, stating that "[n]o lawsuits have been filed against other products or vendors relating to the '533 Patent, suggesting that Symantec represents 100 percent of the market for the accused functionality."  (Exh. 15 (Wagner Reply Rep.), ¶ 44.)

At his deposition, Mr. Wagner admitted that his entire damages opinion depends upon the assumption that the software provided by the SDLA and APA is comparable to the technology of the '533 patent.  (Exh. 4 (Wagner Dep.) at 88:24-89:3.)  Indeed, Mr. Wagner unequivocally confirmed that if that assumption is not correct, there is no evidence to support his 10% royalty rate.  (*Id.* at 89:4-89:23.)  Mr. Wagner further confirmed that he was relying upon Mr. Webster's opinion as the sole support for this critical assumption.  (*Id.* at 90:1-5.)  Because Mr. Webster's testimony establishes that that assumption is pure speculation, Mr. Wagner's methodology does not meet the *Daubert* standard for reliability, and should be excluded.

**B.     The Bundled Agreements On Which Mr. Wagner Relies Are Not Comparable To The Hypothetical License And Thus Should Be Excluded**

Mr. Wagner's opinions also should be excluded as unreliable for the independent reason that the 1997 SDLA and 2002 APA are software development and sale agreements, not patent

licenses.  "[A] patentee c[an]not rely on license agreements that [are] 'radically different from the hypothetical agreement under consideration' to determine a reasonable royalty." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1316 (Fed. Cir. 2011) (quoting *Lucent*, 580 F.3d at 1327).  Agreements are not "'sufficiently comparable' [where] they arose from divergent circumstances and covered different material." *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010).  In particular, the Federal Circuit repeatedly has rejected agreements that "conveyed rights more broad in scope than those covered by [the] patent," including those that "furnished finished software products and source code, as well as services such as maintenance, marketing, and upgrades." *ResQNet*, 594 F.3d at 870-71.

The 1997 SDLA is not comparable to the patent license that would have resulted from the hypothetical negotiation between MiraLink (the struggling original patent owner) and Symantec in July 2006.  The SDLA was executed over nine years before the date of the hypothetical negotiation.  (Exh. 4 (Wagner Dep.) at 70:12-15.)  Pursuant to the SDLA, Mitsubishi and Veritas



As Mr. Wagner acknowledged, none of these rights would have been included in a hypothetical patent license between MiraLink and Symantec.  (Exh. 4 (Wagner Dep.) at 69:22-75:11.)

Similarly, under the 2002 APA, Mitsubishi ███████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

███   As Mr. Wagner acknowledged as well, none of these rights would have been included in a hypothetical patent license between MiraLink and Symantec.  (Exh. 4 (Wagner Dep.) at 76:1-77:5, 79:6-22.)

The SDLA and APA are precisely the type of bundled agreements that *ResQNet* rejected as a proper basis for a damages opinion.  ResQNet's damages expert improperly relied upon ResQNet licenses that "furnished finished software projects and source code."  594 F.3d at 870. Under the SDLA and APA, Mitsubishi was to furnish ████████████████████████████ ███████████████████████████████████████████   The ResQNet licenses allowed licensees to bundle the software into other products (594 F.3d at 870), ██████████ █████████████████████████████████████████████████████████████ And ResQNet's expert "arrive[d] at a (still unsubstantiated) starting point for the hypothetical negotiation" resulting in calculations that "are speculative without any relation to actual market rates at all."  594 F.3d at 871.  Mr. Wagner does the same here.

As is apparent, *ResQNet* and other case law from the Federal Circuit and this Court compel the exclusion of Mr. Wagner's damages opinion as to the '533 patent.  *See, e.g., ResQNet*, 594 F.3d at 873 ("the district court erred by considering ResQNet's re-bundling licenses"); *Lucent*, 580 F.3d 1301, 1328 (Fed. Cir. 2009) (damages award not supported as it was based on agreements "vastly different" from the hypothetical negotiation); *Masimo Corp. v. Philips Elec. N. Am. Corp.,* No. 09-80-LPS-MPT, 2013 WL 2178047, at *16 (D. Del. May 20, 2013) *adopted in relevant part by* 62 F. Supp. 3d 368, 390 (D. Del. 2014) (precluding expert from relying on software license as "not comparable to a hypothetical negotiated license for [the] patents-in-suit"); *see also DataQuill*, 887 F. Supp. 2d at 1023-25 (excluding patentee's damages opinions for failure to establish comparability of agreements); *TracBeam, LLC v. AT&T, Inc.,*

10

No. 6:11-CV-96, 2013 WL 6175372,*5 (E.D. Tex. Nov. 25, 2013) ("Agreements . . . that provide services and products unrelated to the patent are not part of the hypothetical negotiation.").

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, and those set forth in Defendants' Motion for Summary Judgment of Non-Infringement, No Damages, and No Enhanced Damages, Defendants respectfully request that the Court grant their *Daubert* Motion to Exclude the Testimony of IV's Damages Expert, Michael Wagner.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

OF COUNSEL:

Dean G. Dunlavey
LATHAM & WATKINS LLP
650 Town Center Drive, Suite 2000
Costa Mesa, CA 92626
(714) 540-1235

Douglas E. Lumish
Lisa K. Nguyen
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94025
(650) 328-4600

Gabriel K. Bell
LATHAM & WATKINS LLP
555 11th Street NW, Suite 1000
Washington, DC  20004
(202) 637-2200

October 21, 2016

Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com

*Attorneys for Defendants Symantec Corporation and Veritas Technologies LLC*