IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTELLECTUAL VENTURES I LLC and )
INTELLECTUAL VENTURES II LLC, )
                               )
                               )    C.A. No. 13-440 (LPS)
        Plaintiffs, )
                               )    **REDACTED – PUBLIC VERSION**
        v. )
                               )
SYMANTEC CORPORATION and )
VERITAS TECHNOLOGIES LLC, )
                               )
        Defendants. )

## DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT OF NO PATENT INELIGIBILITY

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com

*Attorneys for Defendants Symantec Corporation and Veritas Technologies LLC*

OF COUNSEL:

Dean G. Dunlavey
LATHAM & WATKINS LLP
650 Town Center Drive, Suite 2000
Costa Mesa, CA 92626
(714) 540-1235

Douglas E. Lumish
Lisa K. Nguyen
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600

Gabriel K. Bell
LATHAM & WATKINS LLP
555 11th Street NW, Suite 1000
Washington, DC  20004
(202) 637-2200

Original Filing Date:  November 14, 2016
Redacted Filing Date:  November 21, 2016

# **TABLE OF CONTENTS**

Page

I.  NATURE AND STAGE OF PROCEEDINGS ................................................................... 1

II.  SUMMARY OF ARGUMENT ....................................................................................... 1

III.  STATEMENT OF FACTS .............................................................................................. 3

IV.  ARGUMENT .................................................................................................................. 4

     A.  The Asserted Claims Are Directed to the Abstract Idea of Storing an Up-to-Date Backup Copy of Data Remotely ................................................................. 4

     B.  The Asserted Claims Add Nothing Inventive to the Abstract Idea ...................... 10

V.  CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
 838 F.3d 1266 (Fed. Cir. 2016) ................................................................5, 7, 11

*Affinity Labs of Texas, LLC v. DIRECTV, LLC.*,
 838 F.3d 1253 (Fed. Cir. 2016) ................................................................9, 13, 14

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
 134 S. Ct. 2347 (2014) .............................................................................*passim*

*Altiris, Inc. v. Symantec Corp.*,
 318 F.3d 1363 (Fed. Cir. 2003) ................................................................14

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*,
 --- F.3d ----, No. 2015-1180, 2016 WL 6440387 (Fed. Cir. Nov. 1, 2016)............14

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
 788 F.3d 1371 (Fed. Cir. 2015) ................................................................12

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*,
 827 F.3d 1341 (Fed. Cir. 2016) ................................................................2, 13

*Content Extraction and Transmission LLC v. Well Fargo Bank, National Ass'n*,
 776 F.3d 1343 (Fed. Cir. 2014) ................................................................7, 13

*DDR Holdings, LLC v. Hotels.com, L.P.*,
 773 F.3d 1245 (Fed. Cir. 2014) ................................................................14

*Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*,
 758 F.3d 1344 (Fed. Cir. 2014) ................................................................7

*Electric Power Grp, LLC v. Alstom S.A.*,
 830 F.3d 1350 (Fed. Cir. 2016) ................................................................10, 13, 14

*Enfish, LLC v. Microsoft Corp.*,
 822 F.3d 1327 (Fed. Cir. 2016) ................................................................2, 8, 9

*Fairwarning IP, LLC v. Iatric Systems, Inc.*
 --- F.3d. ---, No. 2015-1985, 2016 WL 5899185 (Fed. Cir. Oct. 11, 2016) ................5, 10, 14

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
 792 F.3d 1363 (Fed. Cir. 2015) ................................................................*passim*

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) ........................................................................*passim*

*Interactive Gift Express, Inc. v. CompuServe Inc.*,
    256 F.3d 1323 (Fed. Cir. 2001) ...................................................................... 14

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015) ...................................................................... 5, 8

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299, 2016 WL 4896481 (Fed. Cir. Sept. 13, 2016) ............................... 9

*Mortg. Grader, Inc. v. First Choice Loan Servs., Inc.*,
    811 F.3d 1314 (Fed. Cir. 2016) ...................................................................... 11

*Novo Transforma Techs. v. Sprint Spectrum L.P.*,
    No. 14-612-RGA, 2015 WL 5156526 (D. Del. Sept. 2, 2015), *aff'd*, 2016 WL
    5335040 (Fed. Cir. Sept. 23, 2016) ................................................................ 10

*SanDisk Corp. v. Memorex Prods., Inc.*,
    415 F.3d 1278 (Fed. Cir. 2005) ...................................................................... 15

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    --- F.3d ----, No. 2015-1599, 2016 WL 6068920 (Fed. Cir. Oct. 17, 2016) ...................... 7, 14

*In re TLI Commc'n LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016) ........................................................................*passim*

## Statutes

35 U.S.C. § 101 ............................................................................................*passim*

## I.     NATURE AND STAGE OF PROCEEDINGS

On October 21, 2016, IV filed a Motion for Partial Summary Judgment of No Laches, No

Estoppel, No Waiver, and No Patent Ineligibility Under 35 U.S.C. § 101.[1]  (D.I. 275, 277, 279.)

This is Defendants' brief in opposition to that portion of IV's Motion which addresses patent

ineligibility ("IV's § 101 Motion"; D.I. 277).[2]

## II.     SUMMARY OF ARGUMENT

Under the two-step test of *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354

(2014), the asserted claims of U.S. Patent No. 5,537,533 ("the '533 patent") are not patent

eligible subject matter because they (1) are directed to the abstract idea of storing up-to-date

backup copies of data remotely for safekeeping and (2) add nothing inventive to that idea, just

conventional computer and network technology, as detailed at length in Defendants' § 101

Motion (D.I. 278).  Nothing in IV's motion undermines that conclusion.

At step one, IV does not dispute that backing up data remotely is an abstract concept.

Instead, IV principally argues that the claims are not directed to an abstract idea because they are

tied to a computer environment and cannot be performed entirely in the human mind.  (D.I. 277

at 14-15.)  That theory has been resoundingly and repeatedly rejected—including, for example,

when IV pressed the same argument in *Intellectual Ventures I LLC v. Capital One Bank (USA)*,

792 F.3d 1363, 1367 (Fed. Cir. 2015) ("*IV-Capital One*"), and *Intellectual Ventures I LLC v.

Symantec Corp.*, 838 F.3d 1307, 1367 (Fed. Cir. 2016) ("*IV-Symantec*").  Here, as in those and

---

[1] Defendants also filed Motions for Summary Judgment of Non-Infringement, No Damages, and Patent Ineligibility Under 35 U.S.C. § 101 on the same date.  (D.I. 278, 283, 287.)  Defendants hereby incorporate their Motion for Summary Judgment of Patent Ineligibility Under 35 U.S.C. § 101 ("Defendants' § 101 Motion"; D.I. 278) by reference.

[2] Defendants oppose IV's Motion for Partial Summary Judgment of No Laches in a separate, concurrently filed brief.  Defendants do not intend to pursue the defenses of waiver and estoppel and therefore do not oppose the grant of partial summary judgment as to those defenses as requested in IV's Motion for Partial Summary Judgment.

countless other cases, reciting the abstract idea in the context of particular computer and network components does not make it "any less abstract." *IV-Capital One*, 792 F.3d at 1367.  (*See* D.I. 278 at 7.)  IV also relies on the Federal Circuit's decision in *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016).  That decision, however, is inapposite because it describes specifically improved computer technology (a new database), whereas IV has not identified any such improved technology here.  Instead, the claims do nothing more than use computer and network technology as tools to implement the basic data backup idea.  (D.I. 278 at 10-16.)

At step two, IV does not contend that any of the computer and network components are non-conventional.  With good reason.  The specification itself acknowledges that the claims use only conventional components, such as a "server," "communication link," and "data buffer"— the same type that the courts have repeatedly found non-inventive.  (D.I. 277 at 16-18.)  IV instead argues that it is "irrelevant" whether the components are "well-known."  (*Id*. at 17.)  Again, IV ignores governing law:  under *Alice*, courts are *required* to examine whether the individual steps are merely "conventional, well-known, routine."  134 S. Ct. at 2358.  IV points to technical-sounding terms like "nonvolatile data buffer" and "spoof packet."  IV § 101 Motion at 17 (emphasis omitted).  But those, too, are purely conventional and non-inventive, as IV's technical expert and the lead inventor of the '533 patent both admit.  (Exh. 1 (Webster Dep.) at 212:10-213:8; Exh. 4 (Staheli Dep.) at 59:4-61:25.)  A "nonvolatile" buffer is just a generic hard drive (per the patent itself, *see* '533 patent at 5:19-21, 6:43-45, 9:14-20; *see also* Exh. 33),[3] and "spoof packets" are just messages confirming the receipt of data (per IV's own construction, *see* D.I. 214 (Claim Construction Mem. Op.) at 8-9).

IV also argues that the steps in "combination" provide a "specific technical solution," as in *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir.

---

[3] Referenced exhibits are attached to the Declaration of Lisa K. Nguyen, filed herewith.

2016).  But that argument fails because, unlike the claims in *Bascom*, which were directed to specifically improved technology with an unconventional personalized filtering scheme and use of network technology, the claims here merely implement the steps of the abstract backup idea using conventional computer technology.  There is no evidence that the steps recited in the claims arrange these conventional components in any innovative way—the asserted claims merely use these components as intended and expected.  Far from a "specific" improvement, IV's claims are phrased in purely functional terms with no guidance on *how* to implement the desired result, just like the "vague, functional descriptions of server components" that did not make the claims eligible in *In re TLI Commc'n LLC Patent Litig.*, 823 F.3d 607, 611-15 (Fed. Cir. 2016), and the equally non-inventive terms in *IV-Capital One*, *IV-Symantec*, and numerous other cases.

Finally, IV's positions are not only wrong under established law, they are inconsistent with the positions it has taken for purposes of infringement and damages.  For § 101 purposes, IV contends that the claims are narrow and non-preemptive; for infringement and damages purposes, IV asserts that the claims are so broad that they encompass essentially any data mirroring over a network.  (*See* D.I. 286 at 1, 6-8.)  IV cannot have it both ways.  IV's approach to infringement and damages leaves no doubt that IV views its claims as broadly directed to an abstract concept—precisely the type that is more likely to impede rather than promote innovation and is ineligible under § 101.  *See Alice*, 134 S. Ct. at 2354.

III.    **STATEMENT OF FACTS**

Defendants incorporate by reference the "Statement of Facts" from their § 101 Motion. (D.I. 278 at 2-4.)

## IV.    ARGUMENT

Defendants incorporate by reference the legal standard for § 101 analyses from their
§ 101 Motion.  (D.I. 278 at 5-6.)

Through its § 101 Motion, IV concedes that the issue of whether the asserted claims are
patent ineligible under § 101 is ripe for adjudication on summary judgment.  The claims have
been construed, IV does not and cannot point to any factual disputes precluding summary
judgment, and it cites no expert testimony or other extrinsic evidence in support of the positions
set forth in its § 101 Motion.  Additionally, IV does not contend that any of the asserted claims
should be assessed individually and instead addresses the asserted claims as a group.  This is
consistent with Defendants' § 101 Motion, explaining that the asserted claims are patent
ineligible whether they are considered individually or as a group.  (D.I. 278 at 6-17.)

As Defendants' § 101 Motion explains, representative claim 25 and dependent claims 26,
27, 29, and 33 are patent ineligible under § 101 because they are directed to the abstract idea of
storing up-to-date backup copies of data remotely for safekeeping with no additional inventive
concept to render that abstract idea patent eligible.  (D.I. 278 at 6-17.)  Nothing in IV's § 101
Motion refutes that conclusion.

### A.    The Asserted Claims Are Directed to the Abstract Idea of Storing an Up-to-Date Backup Copy of Data Remotely

The asserted claims are directed to the basic abstract idea of storing an up-to-date backup
copy of data at a remote location.  (D.I. 278 at 6.)  That is something humans have done for
centuries in numerous contexts (from ancient manuscript repositories to more modern safe
deposit boxes).  (*Id.* at 7.)  As the patent acknowledges, that "abstract" idea is even long-
prevalent in the "computer environment."  (*Id.* at 7-8; '533 patent at 1:57-2:25.)  Reciting that
idea in the context of particular computer and network components, in a series of steps with

broadly functional terms, does not make it "any less abstract." *IV-Capital One*, 792 F.3d at 1367.[4]

Moreover, the '533 patent claims are just like other computer-based claims that the Federal Circuit repeatedly has found to be directed to abstract ideas, including claims for data storage and transmission (*TLI*, 823 F.3d at 610-13), a "network based media managing system that maintains a library of content" (*Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1267, 1268–71 (Fed. Cir. 2016) ("*Affinity-Amazon*")), storing user data to prevent data loss (*Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015)), and sending notifications to users (*Fairwarning IP, LLC v. Iatric Systems, Inc.*, --- F.3d. ---, No. 2015-1985, 2016 WL 5899185, at *4-*5 (Fed. Cir. Oct. 11, 2016)).  In fact, the '533 patent claims are like numerous other *IV* computer claims that the Federal Circuit has found to be ineligible.  *See IV-Symantec*, 838 F.3d at 1313–22 (ineligible claims for filtering and routing email and screening for computer viruses); *IV-Capital One*, 792 F.3d at 1367 (ineligible claims for monitoring budget activity and providing customized web pages); *see also, e.g., Alice*, 134 S. Ct. at 2354 (ineligible claims involved copying data to another location).  (*See* D.I. 278 at 6-10.)

IV's broad and preemptive view of the asserted claims outside the context of the present motion further confirms that the claims are directed to the abstract idea of storing an up-to-date backup copy of data at a remote location.  Indeed, to support its infringement and damages theories, IV and its experts argue that the asserted '533 patent claims preempt any data mirroring over a network.  (*See, e.g.*, Exh. 6 (Webster Op. Rep.) ¶ 121 ("the software [covered by the SDLA and APA] could not meet its sole purpose of 'add[ing] network mirroring capability'

---

[4] Representative claim 25 recites four basic steps: (1) copy the current version of data from one location (a network server), (2) send the data to a remote location (a second, remote network server), (3) send a confirmation of data receipt, and (4) copy the received data onto the remote network server.  ('533 patent at cl. 25-27, 29, 33.)

without the teachings of the '533 patent."); Exh. 7 (Wagner Op. Rep.) ¶ 126 (to justify his

reliance upon the Mitsubishi-Veritas software development agreement ("SDLA") and asset

purchase agreement ("APA"), Mr. Wagner assumes that the software covered by those

agreements must have infringed the '533 patent).)  But here, in an attempt to preserve the patent

eligibility of its claims, IV takes the directly contrary position, arguing that "the '533 patent

claims provide a 'specific technical solution beyond simply using generic computer concepts in a

conventional way,' rather than 'preempting' the whole field of conducting data mirroring on a

basic component such as a generic computer or the internet."  (D.I. 277 at 17-18.)  IV cannot

take two diametrically opposed positions, one to pursue infringement and damages, the other to

survive a § 101 challenge.

IV argues that its claims are not directed to an abstract idea simply because they are

"inextricably tied to [a] computer environment."  (D.I. 277 at 14-15.)  That position is foreclosed

by established Supreme Court and Federal Circuit precedent.  Indeed, that was the argument

addressed and rejected in *Alice*, 134 S. Ct. at 2357 ("[t]he introduction of a computer into the

claims does not alter the analysis" and reciting claims in a "particular technological

environment" does not make them eligible).  The Federal Circuit routinely does the same—

including when IV made those same arguments in two recent cases.  In *IV-Symantec*, for

example, the Federal Circuit held that "[c]haracterizing e-mail based on a known list of

identifiers is no less abstract" than the "long-prevalent practice for people receiving paper mail to

look at an envelope and discard certain letters . . . based on characteristics of the mail"; that

screening messages "in the context of electronic communications" is "directed to a conventional

business practice"; and that "computer virus screening" is "well-known and . . .  abstract" even

though virus screening "originated in the computer era."  838 F.3d at 1314, 1318–19.  And, in

*IV-Capital One*, the court held that, "using a 'communication medium' (broadly including the Internet and telephone networks) . . . does not render the claims any less abstract." 792 F.3d at 1367; *see also, e.g.*, *Content Extraction and Transmission LLC v. Well Fargo Bank, National Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (rejecting patentee's "attempt[] to distinguish its claims from those found to abstract in *Alice* . . . by showing that its claims require not only a computer but also an additional machine—a scanner"). Likewise, here, the computer environment does not make the claims any less abstract.

IV similarly argues that the claims are not directed to an abstract idea because they purportedly cannot "be performed by a human without a computer." (D.I. 277 at 15.) That variation has also been rejected. While being human-performable may be *sufficient* to find claims abstract, *see, e.g.*, *Synopsys, Inc. v. Mentor Graphics Corp.*, --- F.3d ----, No. 2015-1599, 2016 WL 6068920, at *8 (Fed. Cir. Oct. 17, 2016); *Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1348-51 (Fed. Cir. 2014), it is not *necessary*. For example, in *Content Extraction*, the court rejected the argument that the claims are eligible because "human minds are unable to process and recognize the stream of bits output by a scanner." 776 F.3d at 1347. As discussed, the courts have invalidated numerous patent claims that require computers and cannot be performed literally by a human. *See, e.g.*, *Alice*, 134 S. Ct. at 2359 ("computer to create electronic records, track multiple transactions, and issue simultaneous instructions"); *Affinity-Amazon*, 838 F.3d at 1267, 1272 ("network based media managing system that maintains a library of content"); *TLI*, 823 F.3d at 611 (classifying a digital image and storing the image based on its classification). Indeed, the Federal Circuit has recognized that the abstract ideas *themselves* can originate from computer technology. *See, e.g.*, *IV-Symantec*, 838 F.3d at 1319

(abstract idea of "virus screening," which "originated in the computer era"); *Internet Patents*, 790 F.3d at 1348 (abstract idea of retaining information in the navigation of online forms").

Next, IV attempts to recast its claims as directed to "the use of nonvolatile data stores and the transmission of spoof packets to ensure that data copying can be continued in the event of interruptions in power or other events threatening data integrity." (D.I. 277 at 15.) That argument also fails. As an initial matter, the claims say nothing about "the transmission of spoof packets *to ensure that data copying can be continued in the event of interruptions*." And it is the *claims*, not the specification, that controls the analysis: it is improper to rely on "technological details set forth in the patent's specification and not set forth in the claims" to supply the patent-eligible subject matter. *IV-Symantec*, 838 F.3d at 1322. But even if the claims had included such limitations, there is nothing non-abstract about allowing data copying to continue in the event of interruptions in power or other events threatening data integrity. The patent specification recognizes as much, noting that the prior art employed "off-site tape storage" in which "[c]ritical data is copied onto magnetic tapes at the end of each business day." ('533 patent at 2:36-38.) The backups "are then taken by truck or plane to a storage site some distance from the original data" (*id.* at 2:38-39)—which likewise protects "data integrity."

Finally, IV's reliance on *Enfish* is misplaced. (D.I. 277 at 15-16.) The claims found eligible in *Enfish* were "specifically directed to a *self-referential* table for a computer database" and a "specific improvement to the way computers operate," rather than an abstract idea implemented on a computer. 822 F.3d at 1336-37. By contrast, the asserted claims here do not improve the way computers operate but instead are directed to the use of generic computer components and functionality to implement an idea that the specification itself recognizes is "abstract." (*See* '533 patent at 2:3-7.) IV contends that "the claims of the '533 patent recite a

precise, innovative, and technical solution to the problem of protecting critical data during power interruptions or system reboots." (D.I. 277 at 14.) But this is simply the same generic problem—how to store up-to-date backup copies of data remotely for safekeeping—garnished with generic computer terms.[5]

The asserted claims are instead similar to those that the Federal Circuit more recently found directed to abstract ideas in cases like *TLI* and *Affinity Labs v. DIRECTV, LLC*, 838 F.3d 1253, 1255–56, 1265 (Fed. Cir. 2016) ("*Affinity-DIRECTV*"). In *TLI*, the ineligible claims were directed to the abstract idea of "classifying and storing digital images in an organized manner" even though they recited recording images using a telephone unit and transmitting image data for storage on a server. 823 F.3d at 610-13 (distinguishing *Enfish*). In *Affinity-DIRECTV*, the ineligible claims were directed to the abstract idea of "providing out-of-region access to regional broadcast content" because it is a "broad and familiar concept concerning information distribution" that "has been employed by nearly every form of media" even though the claims recited a "network-based" system for providing content to handheld wireless devices. 838 F.3d at 1255–56, 1258 (distinguishing *Enfish*). Likewise, here, the claims are directed to a similar concept of information distribution, but applied in a different medium (remotely mirroring or distributing data over a network).

IV notably fails to identify what computer technology its claims allegedly improve—a generic server already makes use of hard disk drives and messages confirming the receipt of data in the way described in the asserted claims. Moreover, the Federal Circuit and this Court have held that claims with similar buffering components and acknowledgment messages were directed to abstract ideas. *See, e.g.*, *Affinity-DIRECTV*, 838 F.3d at 1264 ("buffer[ing] content");

---

[5] For the same reasons, *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 2016 WL 4896481, *8–10 (Fed. Cir. Sept. 13, 2016) (finding claims that recited "a specific asserted improvement in computer animation" not directed to an unpatentable abstract idea) is inapposite.

*Fairwarning IP*, 2016 WL 5899185, at *4-*5 (sending "notification"); *IV-Capital One*, 792 F.3d at 1367 (same); *Novo Transforma Techs. v. Sprint Spectrum L.P.*, No. 14-612-RGA, 2015 WL 5156526, at *4 (D. Del. Sept. 2, 2015) (automatic notification of receipt).  The claims do not recite "an improvement in computers as tools," but instead "use computers as tools" to perform an abstract idea.  *Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

> ### B.      The Asserted Claims Add Nothing Inventive to the Abstract Idea

At *Alice* step two, the asserted claims add nothing inventive and instead just implement the abstract data backup idea with conventional computer and network hardware, for the reasons discussed in Defendants' § 101 Motion.  (D.I. 278 at 10-16.)  IV's contrary arguments miss the mark.

Although IV emphasizes the terms "nonvolatile data buffers," "nonvolatile server stores," and "spoof packets" in the claims, those are nothing more than labels for conventional components and communication protocols.  The '533 patent states that "nonvolatile stores" and "nonvolatile buffers" encompass such conventional components as hard drives, which is what is used in the preferred embodiment.  ('533 patent at 5:19-21 ("'Nonvolatile' stores include data storage media such as magnetic or optical disk drives"); 6:43-45 ("The presently preferred data buffer includes magnetic hard disks"); 9:14-20 ("nonvolatile server stores" in preferred embodiment are conventional hard drives).)  Consistent with that broad coverage, IV's expert contends that the generic hard drives (*e.g.*, "physical disk volume" and "Primary Data Volume") in a customer's generic server satisfy these elements.  (Exh. 6 (Webster Op. Rep.) at Appx. A1, Rows 25.2-25.3.)  There was nothing innovative or inventive about storing data on magnetic hard drives in 1994, when the application for the '533 patent was filed.

The "spoof packet" term does not help IV either.  During claim construction, IV sought and obtained a broad construction for that term, namely, "a message created by a data transfer

unit that is in the form of an acknowledgment to the operating system of a successfully completed write request." (D.I. 214 at 8-9.) Thus, that term could hardly be more generic. And IV's own technical expert, Mr. Webster, agreed that the '533 patent did not invent nonvolatile data buffers or spoof packets. (*See* Exh. 1 (Webster Dep.) at 212:10-213:8.) *See also Affinity-Amazon*, 838 F.3d at 1270 ("Affinity makes no claim that it invented any of those components or their basic functions, nor does it suggest that those components, at that level of generality, were unknown in the art as of the priority date of the '085 patent"). Having obtained the broad construction for which it advocated, IV cannot credibly argue that the inclusion of a generic message, in a standard format, indicating that data has been written to a generic hard drive somehow protects the asserted claims from being found patent ineligible.

IV argues that "the fact that the '533 patent uses some computer components that are 'well-known' is irrelevant" to the § 101 inquiry. (D.I. 277 at 17.) The Supreme Court and Federal Circuit have rejected that argument and have undertaken that precise inquiry at the second step of *Alice*. In *Alice*, the Supreme Court held that the claims must add something "significant"—an "inventive" concept—to the abstract idea and that merely adding "conventional, well-understood, or routine" computer components is insufficient. *Alice*, 134 S. Ct. at 2357; *see also, e.g.*, *TLI*, 823 F.3d at 613-14 (analyzing hardware components recited in challenged claims and determining that they "fall squarely within [] precedent finding generic computer components insufficient to add an inventive concept"); *Mortg. Grader, Inc. v. First Choice Loan Servs., Inc.,* 811 F.3d 1314, 1324-25 (Fed. Cir. 2016) (generic computer components such as an "interface," "network," and "database," fail to satisfy the inventive concept requirement); *IV-Capital One*, 792 F.3d at 1368 (a "database" and "a communication medium" "are all generic computer elements").

IV also misstates the facts and Defendants' position.  The asserted claims do not just recite "some" conventional computer components, they recite *only* conventional computer components.  And, as set forth above, those conventional computer components are used to perform generic computer functions (such as copying, sending, and storing data).  ('533 patent at cl. 25-27, 29, and 33.)

As noted above, IV has taken inconsistent positions as to the preemptive scope of the patent claims.  For infringement and damages purposes, IV's technical expert characterizes the patent claims as broadly preempting data mirroring over a network.  (Exh. 6 (Webster Op. Rep.) ¶ 121 ("the software [covered by the SDLA and APA] could not meet its sole purpose of 'add[ing] network mirroring capability' without the teachings of the '533 patent.").)  In trying to preserve its claims, however, IV argues that "the '533 patent claims provide a 'specific technical solution beyond simply using generic computer concepts in a conventional way,' rather than 'preempting' the whole field of conducting data mirroring on a basic component such as a generic computer or the internet."  (D.I. 277 at 17.)  IV cannot have it both ways and the claims do not recite anything remotely approaching a "specific technical solution."

IV's preemption argument, moreover, is based on the premise that absolute preemption is required for a claim to be patent ineligible.  But that is not, and has never been, the law.  IV should know this—it made the same argument in *IV-Symantec*, and less than two months ago the Federal Circuit squarely rejected it.  In doing so, the Court reiterated the long-established principle that "[w]hile preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility."  838 F.3d at 1321 (citing *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015)).

Finally, IV argues that the "ordered combination" of claim elements is inventive because sending an alert message ("spoof packet") prior to completing the remote data writing helps improve "data integrity" in the event of a problem with the network.  (D.I. 277 at 17, 15.) However, that combination is akin to—and recited in similarly vague terms as—the non-inventive combination of elements that purported to protect data integrity by scanning for viruses filtering emails in *IV-Symantec*, 838 F.3d at 1316-1322, protect budget integrity by sending users alerts when the budget is spent in *IV-Capital One*, 792 F.3d at 1367-69, and protect financial transaction integrity by sending messages if there are sufficient funds for completion in *Alice*, 134 S. Ct. at 2354.

In addition, sending a spoof packet "prior to undertaking a data write" was a known, conventional technique (*see, e.g.*, Exh. 8 (Katz Op. Rep.) ¶ 1691 (citing U.S. Patent No. 5,155,845 ("Swiatek") at 3:26-42)) and is at most a trivial choice from among existing technological options, *see, e.g.*, *Affinity-DIRECTV*, 838 F.3d at 1264 (claims "recite[d] functions that [were] not inventive but simply constitute[d] particular choices from within the range of existing content or hardware"); *Electric Power*, 830 F.3d at 1355 ("merely selecting" information from a number of existing options was insufficient); *Content Extraction*, 776 F.3d at 1348 ("repeating some steps" is non-inventive).  Even IV's technical expert declined to offer an opinion that spoof packets were unknown or unconventional prior to the '533 patent application. (Exh. 1 (Webster Dep.) at 213:5-13.)

Likewise, IV's reliance on *Bascom* is unavailing.  (D.I. 277 at 14, 17.)  In *Bascom*, the claims were eligible because they recited particular improved computer technology—a user-customizable network filter at a specific location with a specific arrangement of network components.  827 F.3d at 1350-52.  The claims, the court explained, were not just "an abstract-

idea-based solution implemented with generic technical components in a conventional way." *Id.*

at 1351.  In contrast, the claims here do nothing more than implement the abstract data backup

concept with conventional components used in a conventional way.  The ordered combination

adds nothing beyond the individual steps, just as with the ineligible claims that purportedly

enhanced data and network integrity in *IV-Symantec*, *IV-Capital One*, and *Alice*, and the

ineligible data storage and transmission claims *TLI*, *Electric Power*, and numerous other recent

decisions.  In other words, "the focus of the claims is not on such an improvement in computers

as tools, but on certain independently abstract ideas that use computers as tools.  *Electric Power*,

830 F.3d at 1354; *see also Synopsys*, 2016 WL 6068920, at *9; *Affinity-DIRECTV*, 838 F.3d at

1262; *IV-Symantec*, 838 F.3d at 1321; *FairWarning IP*, 2016 WL 5899185, at *3-5 (all

distinguishing *Bascom*).[6]

Moreover, claim 25 does not even require the specific ordering that IV relies upon—*i.e.*,

"sending the spoof packet *prior* to undertaking a data write."  (D.I. 277 at 17.)  *See, e.g.*,

*Interactive Gift Express, Inc. v. CompuServe Inc.*, 256 F.3d 1323, 1342 (Fed. Cir. 2001) ("Unless

the steps of a method actually recite an order, the steps are not ordinarily construed to require

one.").[7]  Only dependent claims 26 and 27 impose any order as to the sequence in which any

---

[6] For the same reasons, the two other cases in which the Federal Circuit found an inventive
contribution at step two do not help IV.  *See Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, --- F.3d
----, No. 2015-1180, 2016 WL 6440387, at *10-11 (Fed. Cir. Nov. 1, 2016); *DDR Holdings, LLC
v. Hotels.com, L.P.*, 773 F.3d 1245, 1257-58 (Fed. Cir. 2014).

[7] The Federal Circuit applies a "two-part test for determining if the steps of a method claim that
do not otherwise recite an order, must nonetheless be performed in the order in which they are
written."  *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003) (finding that the
steps in a method claim need not be performed in the order in which they were written).  The
Court first considers the claim language to determine if "as a matter of logic or grammar" the
steps must be performed in the order in which they are written.  *Id.* at 1370.  Next, the Court
looks to the rest of the specification to determine whether it "directly or implicitly requires such
a narrow construction."  *Id.* (quoting *Interactive Gift*, 256 F.3d at 1343).  As noted, the language
of claims 26 and 27 compels the conclusion that claim 26 is the only asserted claim requiring the

steps are performed, and only claim 26 requires that the "generating and sending a spoof packet" step be performed prior to the step of "copying the data from the output end of the communication link."  In claim 27, two of the five user selectable events triggering the "generating and sending spoof packet" step necessarily occur *after* the step of "copying the data from the output end of the communication link."  Thus, the language of the claims themselves, the doctrine of claim differentiation, and the case law governing the interpretation of method steps, all establish that only claim 26 imposes the step order IV hopes will confer patent eligibility.  And IV does not separately defend the dependent claims, so claim 26's "ordering" does not help IV.  Regardless, that ordering adds nothing inventive for the reasons discussed.

In sum, viewed both individually and as an ordered combination, the steps of the asserted claims add nothing inventive and, at most, limit the abstract idea to a particular technological environment—computer networks—which is insufficient under § 101.

## V.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny IV's Motion for Partial Summary Judgment of No Patent Ineligibility under § 101.

---

(continued…)

spoof packet be sent before the data is copied to the remote server.  And nothing in the specification "directly or implicitly requires" such an order.  Finally, if IV intended to pursue such a requirement, it was required to make that argument during claim construction.  *See, e.g., SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005) (affirming district court's refusal to entertain untimely claim construction arguments during summary judgment proceedings after the cut-off dates under local patent rules and the court's scheduling order).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP,

*/s/ Michael J. Flynn*

_____

OF COUNSEL:

Dean G. Dunlavey
LATHAM & WATKINS LLP
650 Town Center Drive, Suite 2000
Costa Mesa, CA 92626
(714) 540-1235

Douglas E. Lumish
Lisa K. Nguyen
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94025
(650) 328-4600

Gabriel K. Bell
LATHAM & WATKINS LLP
555 11th Street NW, Suite 1000
Washington, DC  20004
(202) 637-2200

November 14, 2016

Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com

*Attorneys for Defendant Symantec Corporation and Veritas Technologies LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 14, 2016, I caused the foregoing to be electronically

filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all

registered participants.

I further certify that I caused copies of the foregoing document to be served on November

14, 2016 upon the following in the manner indicated:

Joseph J. Farnan III, Esquire                                          *VIA ELECTRONIC MAIL*
Brian E. Farnan, Esquire
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiffs*

Parker C. Folse III, Esquire                                          *VIA ELECTRONIC MAIL*
Brooke A.M. Taylor, Esquire
Daniel J. Shih, Esquire
E. Lindsay Calkins, Esquire
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101
*Attorneys for Plaintiffs*

Ian Gore, Esquire                                                    *VIA ELECTRONIC MAIL*
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd  Floor
New York, NY 10019
*Attorneys for Plaintiffs*

Richard W. Hess, Esquire                                             *VIA ELECTRONIC MAIL*
Weston O'Black, Esquire
John P. Lahad, Esquire
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
*Attorneys for Plaintiffs*

*/s/ Michael J. Flynn*
Michael J. Flynn (#5333)